# Wood, Appellant, *v.* Philadelphia.

*Municipalities—City of Philadelphia—Fairmount Park Commission— Appointment of park guards—Civil service—Acts of March 26, 1867, P. L. 547, April 14, 1868, P. L. 1083, June 1, 1885, P. L. 39, and March 5, 1906, P. L. 83.*

Under the Acts of March 26, 1867, P. L. 547, and April 14, 1868, P. L. 1083, the Fairmount Park Commission has full authority to appoint members of the park guard without respect to the civil service provisions of the Act of June 1, 1885, P. L. 39, known as the Bullitt Bill and the Act of March 5, 1906, P. L. 83, entitled "An Act to regulate and improve the Civil Service in cities of the first class;" and this is the case although the act of April 14, 1868, gives to the mayor of the city control over the park guard "in case of emergency."

Argued Oct. 16, 1914. Appeal, No. 42, Oct. T., 1914, by plaintiff, from decree of C. P. No. 1, Phila. Co.,

Sept. T., 1912, No. 6,221, dismissing bill in equity in case of R. Francis Wood v. City of Philadelphia. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Bill in equity for an injunction.

From the record it appeared that the bill was filed to restrain the payment of salary to John Agnew and William Pinkerton, alleged to have been illegally appointed to the position of park guards by the commissioners of Fairmount park, without compliance with the civil service provisions of the Act of March 5, 1906, P. L. 83.

The court in an opinion by KINSEY, J., dismissed the bill.

*Error assigned* was decree dismissing the bill.

*T. Henry Walnut,* with him *Arthur E. Hutchinson,* for appellant.—Employees of the Fairmount park commission are in the civil service of the city of Philadelphia: Bonnell v. Philadelphia, 48 Pa. Superior Ct. 456; Ankenbrand v. Philadelphia, 52 Pa. Superior Ct. 581; Brennan v. People, 52 N. E. Repr. 353.

The park guards employed by the Fairmount park commission are within the civil service act of March 5, 1906, regardless of their character as employees of the city.

*G. W. Pepper,* for appellee.—According to the express provisions of the Act of April 14, 1868, P. L. 1083, the park guards are under the government of the commissioners of Fairmount park, a body which occupies unique relations to the city: Philadelphia v. Germantown Pass. Ry. Co., 10 Phila. 165; Philadelphia v. McManes, 175 Pa. 28.

The act of 1906 was not intended to affect the administration of park affairs, but only to regulate the

92     WOOD, Appellant, *v.* PHILADELPHIA.

Statement of Facts—Opinion of the Court.     [59 Pa. Superior Ct.

appointment of persons who, when appointed, should be under the control of officers recognized by the city charter.

OPINION BY ORLADY, J., February 24, 1915:

This bill in equity was brought by a taxpayer of the city, to enjoin and restrain the Fairmount Park Commission from retaining in its employ, John Agnew and William Pinkerton, as park guards, etc., for the reason that the appointments of these guards had not been made in accordance with the provision of the Act of March 5, 1906, P. L. 81: it being alleged as the basis of the complaint, as stated in the bill, "4th, The said Fairmount Park Commission is a department of the City of Philadelphia, and as such subject of the provisions of the Act of March 5, 1906, P. L. 81," and "5th, The position of park guard in the Department of the Fairmount Park Commission of the City of Philadelphia is a position in the competitive class of the classified civil service of the said city under the Act of March 5, 1906."

The controversy narrows itself to the construction to be given to the acts of assembly which created and continues in office the Fairmount Park Commission, and proscribes the duties and powers of the commissioners. These acts are to be read together as ordaining a code for the control and management of what is recognized to be the most extensive and beautiful municipal park in the United States, and to fairly appreciate the importance of the question, a brief review of the legislation is necessary.

By a proviso of sec. 39, of the Act of February 2, 1854, P. L. 21, which was an amendment to the act of incorporation of the city, it was provided "That it shall be the duty of the city councils to obtain by dedication or purchase, within the limits of the said city, an adequate number of squares or other areas of ground, convenient of access to all the inhabitants, and lay out

and maintain such squares and areas of ground as open public places, for the health and enjoyment of the people forever." By virtue of the authority thus given, the city councils, by an ordinance of September 28, 1855 (Ordinance Book 1855, p. 207), a conveyance to the city of the Lemon Hill Estate was formally recited and accepted, and it was ordained that the same should be devoted and dedicated to public use under the name of Fairmount Park. Subsequently, by regular ordinances (Book 1857, p. 175), the Sedgeley Park Estate was accepted as a gift, and (Book 1867, p. 32), the Lansdowne estate was purchased as additions to the park.

The earlier legislation in relation to the park was merged into more definite form by the Act of March 26, 1867, P. L. 547, which defined by specific boundaries certain lands, and the title thereto was "vested in the City of Philadelphia, to be laid out and maintained forever, as an open public place and park, for the health and enjoyment of the people of the said city, and the preservation of the purity of the water supply of the City of Philadelphia."

Sixteen commissioners were designated, who were to receive no compensation for their services. Six of them being named as ex-officio city officials, five to be named by the then district court, and five by the court of common pleas. Subsequently, the power of appointment was wholly vested in the court of common pleas.

Section 5 of that act is as follows: "That as soon as the said Commissioners shall have fully organized, they shall have the care and management of Fairmount Park, on both banks of the River Schuylkill; and all plans and expenditures for the improvement and maintenance of the same shall be under their control subject to such appropriation as councils may, from time to time, make as aforesaid."

By sec. 3 of the Act of April 14, 1868, P. L. 1083, it was provided, that the title to and ownership of the ground within the boundaries of the park "Shall be

vested in the City of Philadelphia" excepting therefrom certain corporate franchise rights then existing. And sec. 5 of that act provides "That all the ground within the boundaries of Fairmount Park . . . . shall be subject to the powers and control given by the act to which this is a supplement to the City of Philadelphia and the Park Commissioners, designated by or appointed under said act, etc." Section 12 provides, "The said Park Commissioners shall from time to time appoint such officers, agents and subordinates as they may deem necessary for the purposes of this act, and the act to which this is a supplement, and they shall prescribe the duties and the compensation to be paid them, etc." Section 19 authorizes the commissioners to govern, manage, lay out, plant and ornament the park, "and to repress all disorders therein." Section 21 prescribes certain specified rules and regulations and "authorizes such others as the park commissioners may from time to time ordain." Section 27 gives the park commissioners power "to employ, equip and pay a park force adequate to maintain good order therein and in all houses thereupon, which force shall be subject to the orders of the Mayor upon any emergency, and so far as said force shall consist of others than the hands employed to labor in the park, it shall be appointed and controlled as the other police of the city."

Under the legislation cited it has always been conceded, and rightly so, that the park commissioners were not regarded as a title holding body, but that the title to the land embraced within its defined boundaries was vested by the legislature in the city of Philadelphia, and by the same enactments, it was generally admitted that the care and management of the affairs of the park were as definitely vested in the commissioners, so far as the appointment of officers and agents, and prescribing their several duties and the compensation to be paid to them.

As said in Philadelphia v. McManes, 175 Pa. 28,

"The act of 1867 committed the entire and exclusive control and maintenance of the park to the commissioners, and while placing the city councils under obligations to make necessary appropriations for its maintenance, excluded them from all power over the plans and expenditures, carefully requiring, in the most explicit terms, that all plans and expenditures should be under the control of the commissioners. (Sec. 5.)

The act of April 14, 1868, extended this authority by giving to the commissioners the exclusive appointment of all park officers and agents, with the exclusive right to prescribe their duties and the compensation to be paid to them.

This view of the question was taken by Judge KINSEY in refusing the injunction in this case and dismissing the bill, viz.: A plain analysis of sec. 27 of the act of 1868, demonstrates, in the first clause thereof, that power is given to the park commissioners to employ, equip and pay a park force. The second and last clause simply provides that in case of emergency, the park force, exclusive of laborers, shall be subject to the orders of the Mayor, and shall be appointed and controlled as the other police of the city. The word "emergency" is one frequently used, and whose meaning is well understood: ordinarily, it is descriptive of a sudden necessity calling for prompt action. When such a condition occurs, then and only then, has the mayor the right to appoint and control the park force. To "appoint" as here meant, is that he shall designate or call from the park force such men as he needs, appoint them to city service proper, and, consequently of course, control them. We consider that this power is restricted wholly to an emergency."

It is admitted by the appellant that the nature of the employment of the defendants, Agnew and Pinkerton, is to be determined by the character of the Fairmount Park Commission, and it is earnestly contended that the Fairmount Park Commission is a city agency and a part of the city government.

To determine this question requires an interpretation of the Act of June 1, 1885, P. L. 39, known as the Bullitt Bill, and the more pertinent Act of March 5, 1906, P. L. 83, which is entitled "An act to regulate and improve the civil service of the cities of the first class, etc." The earlier act provided for nine executive departments, entitled, public safety, public works, receiver of taxes, city treasurer, city controller, law, education, charities and correction, sinking fund commission, and declared that "no department shall be created other than those herein enumerated." This enactment was held in Commonwealth ex rel. v. Philadelphia, 232 Pa. 5, to contain "a rudimentary civil service law scattered in fragments through its several sections," Arts. 3, 12, secs. 2, 3, art. 15, and did not provide for a civil service commission, but left each department to administer it.

The Act of April 8, 1903, P. L. 155, changed the departments of charity and corrections to that of public health and charities, and subsequent legislation added other subdepartments.

In neither of these acts relating to the civil service management of cities of the first class, is there any reference to the Fairmount Park Commission, as a city department which was at that time a very prominent and important item of municipal ownership and liability. Such an omission is significant, and clearly evidences a legislative intent to allow the park commission to remain under the control of existing laws, and not subject the commissioners and their employees to the rules prescribed for the named departments under the civil service law. A further reason for the exclusion of the park commissioners from the operation of the act of 1906 is the manner of appointment, provided by that act, of eligibles. Under the act of 1906 "no person shall be appointed or employed under any title not appropriate to the duties to be performed; and no person shall be transferred to any position, subject to a competitive

examination, unless he shall have passed an open competitive examination equivalent to that required for such position." The several sections of this act prescribe the appointment and certification of eligibles and qualifications that are not referred to by any words fitting the qualifications for park guards, and it is not reasonable to suppose that there would not have been some legislative declaration on so important a subject, if it was intended to bring the park commission within the limitations fixed by the named departments.

While the title to the office of park commissioner is not raised by this appeal, if the power and method of appointment of their employees is to be determined by the act of 1906, we see no reason why the heads of that body should not be amenable to the same statute. We feel that the commissioners are not as individuals, or as a body, under the civil service laws in force in the city, and that their employees are to be appointed, and their duties are defined as prescribed by the acts of 1867 and 1868, subject to the emergent call of the mayor in such cases as he may deem their service necessary to preserve the public peace or other exigency.

We held in Bonnell v. Philadelphia, 48 Pa. Superior Ct. 456, "That the character of a department of municipal government should be determined by the class to which the head of that department belongs, and that because the department of city treasurer is a county department or office, the employees therein are county and not city employees whose employment is not subject to the civil service act." In Ankenbrand v. Philadelphia, 52 Pa. Superior Ct. 581, on which the appellant relies,. the action was to recover damages for personal injuries sustained by a fall in a hole in a footway bordering on Fairmount Park, and the case turned on whether the city could be held liable for the negligence of the park commissioners in not keeping the footway in a safe condition. The concluding sentence in the opinion is "Without further elaboration our conclusion

is, that as to such matters they constitute an agency of the city, through which the city performs a municipal function and discharges a municipal duty, and therefore the city was liable for the neglect to keep the footway in proper repair." It may well be that under such facts as were established in that case, the park commission was an agency of the city for the purpose of fixing it with liability for a neglect of a duty which requires the owner of property to maintain a safe way for pedestrians on a public highway over such owner's property.

The vesting of the title to the real estate of the park in the city of Philadelphia is determined by the acts of assembly creating Fairmount Park, and under all authorities that fact subjects the city, not only to pecuniary liability to pay for the property taken for park purposes but also to the liability incident to the ownership of fixed property for damages to persons injured thereon: Hey v. Philadelphia, 81 Pa. 44; Barthold v. Philadelphia, 154 Pa. 109.

In the Ankenbrand case it is further stated, "The title to and ownership of the park and all that belongs to it, whether acquired by purchase, donation or the exercise of eminent domain, are vested in the city, except for donations and these are made to the city. The cost of laying out, improvement and adornment are borne by the city, and the money that goes to its maintenance and government comes from the city treasury. The commissioners have no fund under their direct control which they can use for these purposes. The commissioners of Fairmount Park do not constitute a corporate body with capacity to sue and be sued as such, and they are not officers of a corporation or quasi corporation separate and distinct from the city. The power and the duty of the city to maintain, which ex vi termini includes the power and the duty to keep in reasonably safe condition, and do not rest on uncertain inferences, but on express and unequivocal legislative

declaration. . . . It must be conceded that by virtue of the statutory provisions, the commissioners have very broad powers over that part of the city embraced within the park, and even over adjoining footwalks, and in the exercise of these powers it is not subject to direct review or control of the mayor and councils or other city officer or municipal tribunal."

The acts which thus define the liability of the city under such facts, are the ones which give to the park commissioners authority to appoint such officers, agents and subordinates as they may deem necessary.

The words "a city agency and so part of the city government" and "its employees are in the employ of the city" are used in the broadest sense and may be conceded to be philologically correct. In a sense, the commissioners are representatives of the municipality so as to fix it with liability for omission to do the things required by law governing municipalities, but it is not a proper use of the words in the light of the statutes to say that the park commissioners or their employees are city employees.

There is a sharp distinction between the acts done and discretion exercised by the commissioners in the employment of its officers and guards in the administration of the affairs of the park, and on the other hand, the legal liability of the city to third parties who are unlawfully injured in the course of administration of the commissioners of the affairs of the park.

We conclude that Agnew and Pinkerton, as park guards, are under the government of the commissioners of Fairmount Park, and are not under the government and control of the city of Philadelphia, so as to bring them within the provisions of the civil service law.

The decree is affirmed.