## Honaman et al. *v.* Philadelphia, Appellant.

Argued November 21, 1935, reargued December 12, 1935.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*James Francis Ryan,* with him *John J. K. Caskie,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor.

*Samuel Kagle,* with him *George C. Klauder,* for appellees.

OPINION BY CUNNINGHAM, J., February 28, 1936:

The wife-plaintiff in this case was pushing a baby carriage along the brick sidewalk on the north side of Parkside Avenue, a street bordering Fairmount Park, in the City of Philadelphia, while a group of boys were

playing baseball in an adjacent portion of the park. As she passed about ten feet to the rear of the home plate of the diamond, a foul tip struck her in the face, as a result of which she lost several teeth and eventually the sight of one eye.

In their joint suit against the city, she and her husband charged the municipality had been negligent in that it "caused or permitted the said public park to be used as a baseball field to the endangering of the safety of persons lawfully using the said sidewalk," and, although it had ample and timely notice of existing conditions, failed to have the baseball field removed or the sidewalk closed to public travel; and in that it failed to have the sidewalk "properly or adequately guarded or protected," or to cause any "notice or warning to be given" of the danger to pedestrians.

The learned trial judge, taking the view that the responsibility and liability of the city was the same as that of a private owner of a similar property, abutting on a highway, denied the city's motion for binding instructions and submitted the questions of its negligence and the wife-plaintiff's alleged contributory negligence to the jury.

Verdicts of $2,000 for the wife-plaintiff and $500 for her husband were returned; the city's motions for a new trial and for judgment n. o. v. were denied; and these appeals by the municipality from the judgments on the verdicts followed.

Under the conclusions we have reached, neither the question of the wife-plaintiff's contributory negligence nor the refusal of a new trial need be considered. In support of their averments of negligence upon the part of the city, plaintiffs developed these additional facts:

The field where the baseball game was being played was not separated from the sidewalk upon which the injured plaintiff was walking by any barrier, wire screen or back-stop. For many years it had been the

custom of the boys of the neighborhood to use the field as a baseball diamond; and in the course of time the paths between the bases and between the pitcher's box and the home plate had been worn bare. The diamond was so arranged that the path between third base and the home plate roughly parallelled the sidewalk, at a distance of about ten feet. The course of a ball pitched from the pitcher's box to the plate was therefore diagonally toward the street, at approximately a 45-degree angle. As a result of the proximity of the diamond to the street, thrown balls or foul balls not infrequently escaped the catcher or other players and went over the sidewalk, and there was evidence that on a previous occasion such a ball struck an automobile. While this, apparently, was the diamond most frequently used, it was the custom of the boys who played ball to bring their own bases, and at times four or five games may have been in progress at the same time in various parts of the field. There was no evidence tending to show that the city or the Commissioners of Fairmount Park had established this or any other diamond; but on the contrary it was testified that from time to time the park guards required the players to move their game farther away from the street.

With these facts in evidence, the trial judge instructed the jury, in substance, that as the city owns Fairmount Park just as one of its members might own a lot in the city, it had the same duties and was subject to the same responsibilities and liabilities as an individual property owner; and that such an owner of land abutting on a highway, who has control of his premises and who authorizes, or permits, or negligently fails to prevent, a use of his land which injures any person lawfully using the highway is liable for such injury. He then submitted to the jury, under adequate and detailed instructions, the question whether the city

had failed to perform its duty as he had defined it. One paragraph of the charge reads:

"Nobody denies the right of the city to have ball playing in Fairmount Park; the question is, allowing the game to be at that particular point with that pathway there, used to the extent it was and with the catcher in the position in which he usually was and that going on there for a long period of time, was it negligence on the part of the City of Philadelphia either in not putting the boys in another place, or, if they did not want to do that, at least in not seeing to it that some guard or protection was put up so that passersby would not likely be injured."

A majority of the members of this court are of opinion that this case was not tried upon a sound legal theory.

The contentions of the city may be thus stated: While not conceding there was sufficient evidence of negligence to take the case to the jury, its counsel argue: First, the city has no control over Fairmount Park and therefore is not responsible for any negligence which the evidence may have disclosed; second, even if it has control, the utmost shown by the evidence was the neglect and failure of the park guards to police this section of the park in a proper manner.

1. The first contention of the city cannot be sustained. It holds title to the land in the park, which is maintained and managed for the benefit of its citizens by Commissioners appointed by the Board of Judges. The statutes creating the park and providing for its control and management have been considered and fully interpreted in previous cases. See Philadelphia v. McManes et al., 175 Pa. 28, 34 A. 331, (relating to the granting of a franchise for a street railway); Ankenbrand v. Philadelphia, 52 Pa. Superior Ct. 581, (liability for injuries received through falling into a hole in

a park footwalk); and Wood v. Philadelphia, 59 Pa. Superior Ct. 90, (appointment of park guards).

It is true, as these cases point out, that the commissioners have full and exclusive jurisdiction over the management of the park; but this fact has never been held to insulate the city from liability for actionable negligence in that management. The commissioners have no power to levy taxes; the funds for the administration of the park must be appropriated by the city; the commissioners may be independent of the city, but they are not alien to it.

In the Ankenbrand case, supra, this court said: "The Commissioners of Fairmount Park do not constitute a corporate body with capacity to sue and be sued as such, and they are not officers of a corporation or quasi-corporation separate and distinct from the city."

Another argument advanced is that the city should not be held liable for any negligence upon the part of park employees or appointees because it does not employ or appoint them. As stated in the Ankenbrand case, the method of appointment of the servants of a municipality is a matter solely for determination by the legislature; that branch of the government may direct that they be elected by the people, appointed by councils, or chosen in some other way. Under existing legislation, the commissioners are selected by the Board of Judges, and they, in turn, have the sole power to appoint not only ordinary employees but also park guards with authority to enforce law and order within the park. Obviously, the liability of the city cannot be made to turn upon the mere method of the appointment of its agents and servants.

In Wood v. Philadelphia, supra, it was held that the park guards are not subject to control by the officials of the city, or governed by the provisions of the City Charter Act. On the other hand, this distinction was made:

"The words 'a city agency and so part of the city government' and 'its employees are in the employ of the city' are used in the broadest sense and may be conceded to be philologically correct. In a sense, the commissioners are representatives of the municipality so as to fix it with liability for omission to do the things required by law governing municipalities, but it is not a proper use of the words in the light of the statutes to say that the park commissioners or their employees are city employees. There is a sharp distinction between the acts done and discretion exercised by the commissioners in the employment of its officers and guards in the administration of the affairs of the park, and on the other hand, the legal liability of the city to third parties who are unlawfully injured in the course of administration of the commissioners of the affairs of the park."

We are, therefore, of opinion that the city was properly made the defendant in this action. If the injuries of the wife-plaintiff had been caused, without negligence upon her part, by a hole in the footwalk (as in the Ankenbrand case) or any other defect in its construction or maintenance, we would have no hesitation in holding the city liable. Moreover, we think it is immaterial, when inquiring into the liability of the city, that this deplorable accident happened in the park rather than upon a city street or pavement outside of the limits of the park.

2. In approaching the second contention of the city—non-liability for any negligence of its agents and servants in the exercise of its police and governmental authority—it is important to note that, under the evidence, the ball game was not in progress by reason of any affirmative act or acts upon the part of the commissioners or the park guards. By way of illustration and distinction, reference may be made to the case of Erlain v. City of Pittsburgh, 73 Pittsburgh Legal

Journal, 844. That city maintains Schenley Park and so laid out a golf course in it that in driving from the tee to a green of one of the links the balls necessarily crossed one of the public roads of the park. While passing along the road the plaintiff was hit by a ball; it was held that the question, whether "the city had established and permitted to be used by the golf playing public, a situation which was dangerous to that part of the public which was using the driveways," was one of fact for a jury.

A similar case is Paraska et al. v. City of Scranton, 313 Pa. 227, 169 A. 434, an action for damages for injuries suffered by a child in falling from a swing constructed in a playground maintained by the municipality.

Had the baseball diamond in the present case been constructed under the affirmative directions of the commissioners, and the boys thus invited to use it, then it may be there would have been a corresponding duty upon the city to erect some kind of screens or other protection back of the plate. We make no ruling upon such a situation, because it is not here present. The evidence merely establishes that the boys had long been permitted to play ball at this location, and the negligence, if any, would lie in the fact that they were not required to play at such a distance from the street that the danger to passers-by would be lessened, or prohibited from playing altogether. Obviously the park officials could not reasonably have been expected to place screens or back-stops at every point along the street where a baseball game might have been anticipated. The fact that the particular diamond in question had been used for a long period of time, and that its use for such purpose was evident to the park officials, merely indicates a failure on their part to control the playing of the game in the interests of those using the street or sidewalk.

We are of opinion that if there was negligence in this case, and the jury has found there was, it arose from a failure properly to perform a governmental duty, and not from neglecting to perform a proprietary obligation. This injury did not arise from a physical defect in the park, or footwalk, or from a failure properly to plan and construct recreational facilities affirmatively undertaken by the park officials. On the contrary, the accident, if it was a preventable one, came about from a failure of proper policing; and this is one of those risks of government against which the citizen has no redress.

It is not necessary to refer to authorities dealing generally with the immunity of municipalities from the results of neglect in the exercise of a governmental function. The distinction between the liability of a city when acting in a corporate or business capacity and its nonliability when performing acts of a public or governmental character was fully considered in Scibilia v. Philadelphia, 279 Pa. 549, 124 A. 273, a case in which a pedestrian standing along the side of a street was injured by a city ash truck, negligently operated by one of its employees.

We think an exact analogy to the present situation may be found in the matter of the construction and maintenance of city streets. It has always been recognized that the city is charged with a proprietary duty of maintaining such streets and sidewalks in good order and condition; and one who uses them may recover for injuries sustained through defects in construction or maintenance. On the other hand, it has never been supposed that a municipality would be held responsible to a traveller for actions of third persons which might interfere with his safety. The municipality should insure safe travel upon its highways; but a failure to prevent dangerous sports, disorder or violence, thereon,

or upon abutting city owned land, does not subject it to legal liability.

The research of counsel has afforded us several illustrations of this principle. Thus, in Trower v. City of Louisiana, 198 Mo. App. 352, 200 S. W. 763, it appeared that the city had entered into a contract with an amusement company to conduct a carnival in its streets. Included among the attractions was a shooting gallery. The plaintiff, while walking along the street, was hit in his eye by a splinter from a bullet coming from the gallery, producing injury which necessitated the removal of the eye. The court pointed out that the officers and police of the city had obviously failed in their duty in not preventing such a dangerous exhibition from taking place in the public streets. On the other hand, it specifically held that the city was not liable for the damage which resulted from the neglect of its officers in the exercise of a public function.

Again, in Goodwin v. Reidsville, 160 N. C. 411, 76 S. E. 232, the plaintiff was struck by a baseball while driving along a public street of the defendant town, and suffered injuries which eventually caused his death. The evidence tended to prove that certain boys had a custom of frequently collecting in the streets and playing ball in the evenings during the spring and summer months; that this custom had been going on for over two years and was well known to the police officers of the town; and that no effort had been made to stop it. The court held that the defendant was not liable for the injuries sustained, because they were occasioned by the unlawful or improper use of its streets, and not by any defect in their condition.

So, also, in Jones v. Williamsburg, 97 Va. 722, 34 S. E. 883, liability was denied for injuries sustained by the plaintiff in a collision with a bicycle improperly ridden on the sidewalk.

Other examples might readily be given of the applica-

tion of this principle.* Those cited, however, are sufficient to make the distinction clear.

The principle of all these cases is that a municipality is not liable to persons injured by acts of others over whom it has no control except through its police. Non-liability of a municipality is the general rule, liability the exception. The exception is employed to impose responsibility upon the municipality where, through custom or through the exercise of a proprietary function, it is bound to maintain physical property in good order and condition. The rule, however, has never been extended to embrace liability for failure to restrain negligent or unlawful interference by third parties with the rights of its citizens, even though such interference may be obvious or habitual. Such an extension would open up a vague and unlimited field of liability. If a municipality is liable for injuries resulting from a hole in a street, but is not liable for similar injuries resulting from disorder or a riot, we can see no logical reason for imposing liability for injuries sustained within the confines of a public park and resulting, not from a want of proper maintenance of paths, roads or structures, but from a want of proper policing. Had it been a long-time custom for the boys of the neighborhood to play their game upon the street on the other side of the footwalk, there could be no valid contention that the city should be held responsible for such injuries as were here inflicted, even though its police should have prohibited the play. If this be correct, there can be no sound reason for reversing the rule

*In this connection, two lower court decisions in this state have been called to our attention, in both of which liability was denied for injuries sustained from coasting by third persons on public highways, although the evidence in each case established that the coasting was habitual and well known to the authorities: See Stevenson v. Phoenixville, 1 Chester Co. Rep. 113; Brumbaugh v. Borough of Bedford, 23 Pittsburgh Legal Journal (N. S.) 462.

when play is conducted immediately across the sidewalk at a place where the city has no greater jurisdiction.

The facts of the cases cited and relied upon below place them upon the other side of the dividing line. In Briegel v. Phila., 135 Pa. 451, 19 A. 1038, the injuries grew out of a structure defectively maintained on city-owned property; in Glase v. Phila., 169 Pa. 488, 32 A. 600, the negligence charged was the construction of a manhole at Fairmount Water Works with a tilting or revolving lid; in Weber v. Harrisburg, 216 Pa. 117, 64 A. 905, a partly exposed cable was allowed to remain across a path in a public park; in Siwak v. Rankin Boro., 72 Pa. Superior Ct. 218, the injuries were caused by noxious vapors from an incinerating plant; and in Novak v. Ford City Boro., 292 Pa. 537, 141 A. 496, the borough strung an electric wire in its park at such a low height that children might jump and catch it. It will be noted that in all of these decisions the basis for liability was improper construction or maintenance. None of them involved the right to be protected from the negligent actions of third parties.

Our conclusion is that the rules of law adopted by the court below are not applicable to the uncontroverted facts disclosed by the evidence. We think the city's motion for judgment in its favor notwithstanding the verdicts should have been granted upon the ground that when plaintiffs are given the benefit of every reasonable inference from the evidence, the only negligence shown was that of the city's servants and agents in the performance of their police duties. It follows that the first assignment of error must be sustained.

The judgments are reversed and judgment is here entered for appellant.