## Bagley et al., Appellants, *v.* Philadelphia.

Argued October 6, 1941.

Before Keller, P. J., Cunningham, Baldrige, Stadt-field, Rhodes and Hirt, JJ.

*J. B. H. Carter,* for appellants.

*James Francis Ryan,* with him *John J. K. Caskie,* Assistant City Solicitors, and *Francis F. Burch,* City Solicitor, for appellee.

Opinion by Cunningham, J., April 14, 1942:

During the evening of October 8, 1937, Margaret Mary Bagley, then a minor, while crossing, with a companion, from the east to the west side of the East River Drive in Fairmount Park, Philadelphia, at a point north of the Girard Avenue bridge, sustained serious personal injuries when struck by a motorcycle, coming south on the drive at a rate of fifty-five miles per hour and operated by William Cianfrani, a Sergeant of the Fairmount Park Guards, who was pursuing a speeding motorist.

An action of trespass brought in the court below by Margaret Mary Bagley, through her next friend and mother, Mary Bagley, and the latter in her own right, against the City of Philadelphia, resulted in a verdict in favor of the minor-plaintiff for $1500, and a separate verdict in favor of her mother for $2500.

Motions were made in behalf of the city for judgment in its favor notwithstanding the verdicts or a new trial. The court below granted the city's motion for judgment n. o. v. but made no disposition of its motion for a new trial. The trial judge, KUN, J., speaking for the court below, remarked, however, in the course of his opinion supporting the judgment in favor of the city: "Other considerations unnecessary here to mention would require the granting of a new trial."

From the judgment in favor of the city Mary Bagley appealed to No. 48, October Term, 1941, of this court, and Margaret Mary Bagley to No. 49 of that term. Both appeals will be disposed of in this opinion.

In support of their alleged right to maintain this action, appellants invoke the following provisions of section 619 of the "Vehicle Code" of May 1, 1929, P. L. 905, as last amended June 29, 1937, P. L. 2329, 75 PS §212: "Every county, *city*, borough, incorporated town, or township within this Commonwealth, *employing any person*, shall be jointly and severally liable with such person for any damages caused by the negligence of such person while operating a *motor vehicle* or fire department equipment upon a highway in the course of their employment; . . . . . ." (Italics supplied.)

Appellants averred in their statement of claim that the motorcycle involved in the accident "was being driven and operated by said Cianfrani in the course of his duties as a servant, agent or employee, of the said City of Philadelphia." The negligence charged was driving and operating the motorcycle at an excessive speed and without having it under proper control.

As the record now stands, and under appellants' statement of the question involved, we are not concerned with the issue of Cianfrani's negligence or the question of the minor-appellant's contributory negligence. The judgment in favor of the city was placed squarely by the court below upon its conclusion that the "City of Philadelphia did not employ the park

guard whose negligence is charged against the city," and therefore "is not liable, [under the Act of 1929, supra,] to the plaintiffs in damages for any negligence upon [his] part." We agree that this is the fundamental issue in the case.

If the city was not "employing" Cianfrani, within the meaning of the statute, there can be no recovery against it, no matter how negligent he may have been. On the other hand, if he was the employee, servant or agent, of the city, the statute strips the city of its pre-existing common law immunity from liability for his negligent acts. As stated in *Scibilia v. Phila.*, 279 Pa. 549, 556, 124 A. 273, "except where a right to recover is expressly given by act of assembly, no suit lies against municipalities for negligence of their police or fire departments." See *Elliott v. Phila.*, 75 Pa. 347.

In lieu of printing the testimony the parties have agreed upon a "Statement of the Case" under our Rule 56, from which we quote these applicable paragraphs:

"At the time of the accident Sergeant Cianfrani was engaged in the performance of his duties as a motorcycle patrolman in Fairmount Park ...... Sergeant Cianfrani was and is paid by the Treasurer of the City and County of Philadelphia by checks issued upon a certificate and request of the Commissioners of Fairmount Park. City Council of Philadelphia appropriates the amount of his salary at the request of the Commissioners of Fairmount Park.

"Fairmount Park Guards are appointed by Fairmount Park Commission and are not required to comply with the Civil Service provisions of Article XIX of the City Charter Act of June 25, 1919. Motorcycle Officer Cianfrani did not take any examination given by the Civil Service Commission of Philadelphia, was not appointed from any eligible list of the Civil Service Commission and his appointment was not certified by the Civil Service Commission. He was appointed to his position of motorcycle officer of the Fairmount

Park Guards and was promoted to Sergeant of Fairmount Park Guards solely by the action of the Commissioners of Fairmount Park. Motorcycle Officer Cianfrani performs his duties solely under the orders of the Commissioners of Fairmount Park and their representatives.

"The Act of April 14, 1868, P. L. 1083, contains the following provisions:

'Section 11. The City of Philadelphia ...... shall annually assess taxes for keeping in repair and good order the said park ......'

'Section 12. The said Park Commissioners shall, from time to time, appoint such officers, agents and subordinates as they may deem necessary, for the purposes of this act and the act to which this is a supplement; and they shall prescribe the duties and the compensation to be paid them; ......'

'Section 27. The said Park Commissioners shall employ, equip, and pay a Park force, adequate to maintain good order therein and in all houses thereupon; which force shall be subject to the orders of the Mayor upon any emergency; and so far as said force shall consist of others than the hands employed to labor in the Park, it shall be appointed and controlled as the other police of the city.'

"The Park Commission is composed of sixteen members. Six of these members are ex-officio, being duly elected or appointed officials of the City of Philadelphia, and the remaining ten are appointed by the board of judges of the County of Philadelphia, who in turn are elected by the citizens of the County of Philadelphia. Title to the ground composing Fairmount Park is vested in the City of Philadelphia. All funds collected by Fairmount Park Commissioners must be deposited with the County Treasurer and reappropriated by City Council."

Granting that under the legislation above quoted the park guards and the "hands employed to labor in the

park" are not *directly* employed by the city, and that the park commission has the exclusive right to appoint and control the activities of the guards and laborers in the park, it does not follow that the city is immune from liability for their negligent acts if the park commission, under all the applicable legislation, may properly be considered an agency of the city for the maintenance, management, control and policing, of the park. It is not an unreasonable interpretation of the provision of the vehicle code here involved to say that it was intended to apply to any city "employing any person" through one of its legally constituted agencies. Municipalities must necessarily act through their officials, departments and agencies.

As will later appear, the city has repeatedly been held liable for the negligence of the laborers employed by the commission when they have failed to maintain the paths, footwalks, roadways and structures of the park in reasonably safe condition. None of the laborers are directly employed by the city. As respects park guards, it is to be noted that under the above provision of section 27 of the Act of 1868, 53 PS §6665 they are not entirely divorced from the police force of the city but are "subject to the orders of the mayor upon any emergency," and, in case of a sudden necessity for prompt action, park guards "shall be appointed and controlled as the other police of the city." This subject was considered in *Wood v. Phila.*, 59 Pa. Superior Ct. 90, 95, hereinafter cited and discussed.

The exclusive right of the commission to manage and supervise the park was established in a line of decisions of which *Phila. v. McManes et al.*, 175 Pa. 28, 34 A. 331; *Phila. v. Spangler et al.*, 9 D. & C. 577 (C. P. 2, Phila. Co.); *Wakelin et al. v. Phila. et al.*, 21 Dist. 39 (C. P. 5, Phila. Co., 1911); *The City of Phila. v. The Germantown Passenger Rwy. Co.*, 10 Phila. 165 (C. P. Phila. Co.,) are examples.

In the McManes case, the Supreme Court adopted

the opinion of THAYER, P. J., in holding that the commissioners have the power to grant a franchise to construct a passenger railway within the park without securing the consent of the city.

It was held by Judge STERN, now Mr. Justice STERN, in the Spangler case, that the park commission is a special commission within the meaning of Article III, §20 of the Pennsylvania Constitution of 1874, when he stated (p. 587) : "To this commission thus constituted was not only entrusted a municipal function, namely, the control and management of Fairmount Park, which is municipal property and the title to which is held by the City of Philadelphia, but a power thereover which, as construed by numerous decisions of the courts, is exclusively and totally independent of the municipal government."

Appellants recognize that the city has no right of control over those employed in the maintenance and policing of the park. Their position is that the relationship between the city and the park commission requires that a distinction be drawn "between the *right* of management and the *responsibility* for management." Stated in another fashion, their contention is that the legislative enactments pertaining to the park constitute the commission an agency or arm of the city, insofar as liability for negligence occurring in the course of the management, maintenance and policing, of the park is concerned. The following statement from appellants' brief expresses the fundamental proposition upon which they base their right of recovery: "While the statutes applicable to the park clearly recognize the exclusive right of the commission to manage the affairs of the park, and the courts have consistently upheld this construction, it is nevertheless true that the park is not for all purposes to be considered independent of the city so as to insulate the city from suit."

Cases relied upon by appellants and dealing with the

liability of the city for negligence in the administration of park affairs, are: *Ankenbrand v. Phila.*, 52 Pa. Superior Ct. 581, and *Honaman et al. v. Phila.*, 322 Pa. 535, 185 A. 750, reversing the judgment of this court in 121 Pa. Superior Ct. 262, 183 A. 446. In the Ankenbrand case, the negligence consisted of permitting a hole to exist in a park path; and, in the Honaman case, the negligence arose out of the failure to erect a barrier along park property, where boys customarily played baseball, to protect pedestrians using the adjoining sidewalk from the danger of being hit by baseballs. In both cases it was held, in effect, that the city was liable for the negligence of the employees selected and controlled by the commission.

In the Ankenbrand case, the opinion written for this court by RICE, P. J., concludes with this paragraph: "The conclusive test is not the mode of appointment of the commissioners (although that may be a pertinent circumstance in arriving at the legislative intent as to where a duty has been imposed), but the nature of their functions with reference to the public ways of the city within the park limits. Without further elaboration our conclusion is, that as to such matters they *constitute an agency* of the city, through which the city performs a municipal function and discharges a municipal duty, and therefore the city was liable for the neglect to keep the footway in proper repair." (Italics supplied.)

The latest case along this line is that of *Miller et al. v. City of Phila.*, 345 Pa. 1, 25 A. 2d 185, (opinion filed March 23, 1942,) in which it was held that the proper maintenance of the park is one of the proprietary duties of the city, but recovery was denied a gratuitous licensee, who fell and was injured when he stepped upon a loose stone while descending a trail, because there was no evidence that the city knew or should have known of the dangerous condition of the stone.

Other cases in the same category are: *Hey v. Phila.*, 81 Pa. 44,—precipice by roadside unprotected by barriers; *Barthold v. Phila.*, 154 Pa. 109, 26 A. 304,—unenclosed well accessible to children; *Glase v. Phila.*, 169 Pa. 488, 32 A. 600,—manhole improperly covered; *Rockett v. Phila.*, 256 Pa. 347, 100 A. 826,—roadway obstructed by fallen tree.

It is contended on behalf of the city that in these cases liability was based solely upon the city's *ownership* of the park. We are not aware of any principle of tort law which subjects an owner of land to liability for a defective condition therein, which arises while he is neither in possession nor control of the land. Liability for maintenance follows possession and control, regardless of title. Our understanding of the park cases in which liability has been imposed upon the city is that the commissioners are the representatives and agents of the city in administering the affairs of the park. In the Ankenbrand case it was said, (p. 589), that "The commissioners of Fairmount Park do not constitute a corporate body with capacity to sue and be sued as such, and they are not officers of a corporation or quasi-corporation separate and distinct from the city." It was further remarked, (p. 590) that the mere fact the city does not appoint the park commissioners does not make them any less agents of the city. A paragraph from the opinion reads:

"It is true of a city, as of every corporation, that it can perform its corporate functions and duties only through natural persons. But, as the city derives its powers from the legislature, it is for that body to determine how the officers and agents of the city shall be selected. It might, in the present instance, have designated the city councils to exercise the powers and perform the duties in question, or a board to be appointed by them or to be elected by the people of the city, and, in either event, we suppose it would not be questioned that the officers so elected were the repre-

sentatives and agents of the city. But we cannot see that the commissioners of Fairmount Park are any less the representatives and agents of the city in doing that which it is made the duty of the city to do, because they are not appointed in either of the ways above suggested."

Ownership was an important factor in the cases in which the city was held liable for the negligence of the workmen selected by the commissioners in failing properly to maintain the footpaths, roadways and structures, in the park, but it was not the sole basis for imposing liability upon the city. Liability arose primarily out of the breach by the city, through the acts or omissions of its agents and representatives, the park commissioners and their subordinates, of the duty the city owed as a municipality to third persons lawfully using the park. Compare, *Stevens et ux. v. Pittsburgh,* 129 Pa. Superior Ct. 5, 194 A. 563, affirmed by the Supreme Court, 329 Pa. 496, 198 A. 655, for a case in which park employees failed to suppress promiscuous shooting in a city park.

Again, the city strenuously argues that any support which appellants may derive from the Ankenbrand and Honaman cases is wholly dissipated by the decision of this court in *Wood v. Phila.,* 59 Pa. Superior Ct. 90. The issue there presented was whether park guards are employees of the city in the sense that they are subject to the civil service statutes governing the appointment of city employees. The particular statutes involved were the prior City Charter, known as the Bullitt Bill, Act of June 1, 1885, P. L. 39, and the later Act of March 5, 1906, P. L. 83, entitled "An Act to regulate and improve the civil service of cities of the first class." In deciding that park guards are not city employees within the meaning of these acts, it was stated in an opinion by ORLADY, J., (p. 99) : "We conclude that Agnew and Pinkerton, as park guards, are under the government of the commissioners of Fair-

mount Park, and are not under the government and control of the City of Philadelphia, so as to bring them within the provisions of the civil service law." However, in so concluding it was not implied that park guards are not city employees *in any sense of the term.* The issue there was whether they were employees within the meaning of the civil service. statutes. Those statutes by their very terms were limited to city departments, and, as Fairmount Park Commission was not included as such a department, they did not embrace within their purview employees engaged in park maintenance, or policing. The opinion leaves no doubt as to this. It was stated (pp. 96-7) :

"In neither of these acts relating to the civil service management of cities of the first class, is there any reference to the Fairmount Park Commission, as a city department which was at that time a very prominent and important item of municipal ownership and liability. Such an omission is significant, and clearly evidences a legislative intent to allow the park commission to remain under the control of existing laws, and not subject the commissioners and their employees to the rules prescribed for the named departments under the civil service law. A further reason for the exclusion of the park commissioners from the operation of the Act of 1906 is the manner of appointment, provided by that act, of eligibles. Under the Act of 1906 'no person shall be appointed or employed under any title not appropriate to the duties to be performed; and no person shall be transferred to any position, subject to a competitive examination, unless he shall have passed an open competitive examination equivalent to that required for such position.' The several sections of this act prescribe the appointment and certification of eligibles and qualifications that are not referred to by any words fitting the qualifications for park guards, and it is not reasonable to suppose that there would not have been some legislative declaration on so important a

subject, if it was intended to bring the park commission within the limitations fixed by the named departments."

It was carefully pointed out that an entirely different problem is presented in a case where the question at issue is one of liability for negligence in the management of the park. (p. 99):

"In a sense, the commissioners are representatives of the municipality so as to fix it with liability for omission to do the things required by law governing municipalities, but it is not a proper use of the words in the light of the statutes to say that the park commissioners or their employees are city employees.

"There is a sharp distinction between the acts done and discretion exercised by the commissioners in the employment of its officers and guards in the administration of the affairs of the park, and on the other hand, the legal liability of the city to third parties who are unlawfully injured in the course of administration of the commissioners of the affairs of the park." (Italics supplied.)

It is not necessary to make a detailed reexamination of the legislation relative to the acquisition and management of the park. These enactments have been comprehensively and adequately reviewed and discussed in the Wood, Honaman, and other cases herein cited. It is reasonable to infer from the applicable statutes that the legislature intended that financial responsibility for negligence in the management of the park should rest upon the city. That liability is based, to a large extent, upon the agency principles to which we have referred, and not solely upon the fact that the title to the park property is vested in the city.

By the enactment of the provision of the Vehicle Code with which we are here concerned, the legislature plainly declared its intention to abolish the immunity, which theretofore protected a municipality from liability for the negligence of its agents and employees while engaged in exercising any of its governmental powers and

functions, in all cases in which those agents and servants happened to be operating a "motor vehicle or fire department equipment upon a highway in the course of their employment." In such cases all distinctions between the liability of a municipality when acting in its governmental, as contrasted with its proprietary, capacity have been eliminated.

Upon consideration of the facts here of record and the statutory enactments applicable thereto, our conclusion is that Cianfrani, although not a city employee within the civil service laws, should be considered as having been employed by the city—through the park commission acting as one of its municipal agencies—within the intendment of the Vehicle Code, and that the city is therefore "jointly and severally liable" with him for any negligence of which he may have been guilty while operating his motorcycle at the time the minor-appellant was injured.

The judgment is reversed and the record remitted to the court below for consideration and disposition by it of the city's pending motion for a new trial.