# Siegfried v. Pa. Department of Transportation

C.P. of Northampton County, No. C-48-CV-2009-7279

*Gary S. Figore*, for plaintiff.

*James J. Dodd-o, John W. Stahl, Patrick J. Hughes, Kevin R. Gardner* and *Frank A. Baker*, for defendants.

BARATTA, *J.*, June 24, 2014—

## ORDER OF COURT

And now, this 24th day of June, 2014, upon consideration of the defendants' motions for summary judgment and the plaintiff, Colleen Siegfried, individually and as administratrix of the estate of Steven W. Siegfried's, responses thereto, it is hereby ordered that said motions are disposed of as follows:

1. Defendant Commonwealth of Pennsylvania Department of Transportation's motion for summary judgment is granted;

2. Additional defendant Bracalente Construction, Inc.'s motion joining in motion and separate motion for Summary Judgment are granted;

3. Defendant James Rotherham, executor of the estate of Albert P. Rotherham's, motion for summary judgment is denied; and

4. Defendant JP Morgan Chase Bank, NA and The Bank of New York Mellon f/k/a The Bank of New York as successor to Trustee JP Morgan Chase as Indenture Trustee for ABFS Mortgage Loan Trust 2003-2 (improperly pleaded as "JP Morgan Chase Bank, individually and as Indenture Trustee)'s motion for summary judgment is granted.

## STATEMENT OF REASONS

### Facts and Procedural History

On August 28, 2009, the plaintiff, Colleen Siegfried, individually and as administratrix of the estate of Steven W. Siegfried (the "decedent"), filed a complaint in negligence. Thereafter, on October 1, 2009, the plaintiff filed an amended complaint. The factual predicate for this dispute is as follows:

On July 14, 2007, the decedent operated a motorcycle traveling south on State Route 611 through Forks Township in Northampton County, Pennsylvania. Although the circumstances preceding the one-vehicle accident are disputed, it is undisputed that the decedent's motorcycle ended up hitting a wooden utility pole near "My Little Gypsy Rose," a restaurant/bar at 1600 North Delaware

Drive (the "Property"). As a result of this collision, the decedent suffered severe injuries which ultimately resulted in his death on July 28, 2008, for which the plaintiff seeks money damages. The defendants (Commonwealth of Pennsylvania Department of Transportation ("PennDOT"), James Rotherham, Executor of the estate of Albert P. Rotherham ("Rotherham"), and/or JP Morgan Chase Bank, individually and as indenture trustee ("JPMC")) are alleged to have had either an ownership interest in the property or are alleged to have a legal duty of care related to that property.

The parties dispute the chain of events that led to the decedent's accident.[1] The plaintiff alleges that the defendants created or allowed a dangerous condition to exist in where the motorcycle's tires were allegedly "trapped and guided along the interface of the paved portion of the roadway which ultimately resulted in the motorcycle to be guided or thrown into the aforementioned utility pole." Amended complaint ¶ 16. The defendants contest both plaintiff's description of the accident and the existence of an alleged duty of care toward the decedent during the night in question. Each defendant also disputes the allegations of liability for the condition of Route 611 and the right-of-way. Finally, the defendants who are alleged to have an ownership interest in the property adjacent to the highway onto which the motorcycle allegedly drove before hitting the utility pole dispute the chain of title as

---

1. Issues related to the accident are that the decedent did not have a valid license to operate a motorcycle; that the decedent was allegedly under the influence of alcohol at the time of the accident; and, that while the decedent was hospitalized with significant cognitive injury from July 14, 2007, until his death on July 28, 2007, in response to a question asked by the administratrix, decedent managed to whisper "deer" (apparently not "dear"). The administratrix has interpreted the alleged "deer" proffer as an assertion that the accident was caused by a phantom deer on the roadway, which caused the decedent to leave the roadway to avoid impact.

alleged by plaintiff.

On November 18, 2009, defendant PennDOT filed a joinder complaint naming Bracalente Construction, Inc. ("Bracalente") as a defendant. In its joinder complaint, PennDOT avers that it had entered into a contract with Bracalente to repair and resurface miles of Route 611, which includes the portion of highway at issue in this case. *See* joinder complaint ¶ 4. As such, PennDOT argues, if there was a dangerous condition of Route 611, Bracalente's negligence created or caused it, and is therefore obligated to indemnify and hold harmless PennDOT from any claims. *Id.* at ¶¶ 5-6.

On September 6, 2013, PennDOT filed its motion for summary judgment and its supporting brief. On September 16, 2013, Rotherham filed a motion for summary judgment and a supporting memorandum of law. On September 16, 2013, JPMC also filed its motion for summary judgment and a supporting memorandum of law. Finally, on October 29, 2013, Bracalente filed its motion joining in the motion for summary judgment of defendant Commonwealth of Pennsylvania Department of Transportation and Separate motion for summary judgment.

On October 16, 2013, the plaintiff filed her reply to the motions for summary judgment of defendants Rotherham and JPMC. In her brief in response, filed the same day, the plaintiff stated that she had no expert reports against and no objection to the dismissal of defendant PennDOT and additional defendant Bracalente. Neither Rotherham nor JPMC responded to the motions for summary judgment of PennDOT and Bracalente.

On October 16, 2013, Rotherham filed an answer to JPMC's motion for summary judgment, disagreeing chiefly with JPMC's characterizations of certain exhibits

and Rotherham's relationship with Best, and denying ownership of the property on July 14, 2007. Also on October 16, 2013, JPMC filed a memorandum of law, in which it opposed the plaintiff and Rotherham's characterizations of JPMC's involvement with the property at the time of the accident. On November 6, 2013, Rotherham filed a reply brief to the plaintiff's response, again addressing the property ownership issue and arguing that certain evidence as to an issue of material fact was inadmissible as a matter of law.

Finally, on March 25, 2014, the plaintiff filed a supplement to plaintiff's brief in response to defendants' motions for summary judgment. With regard to JPMC, the plaintiff asserts that JPMC should be held "voluntarily legally responsible" for the property under the consent order, invoking the doctrines of waiver and collateral estoppel. As for Rotherham, the plaintiff argues that he purchased the property on February 9, 2007, and operated it as a "joint venture" with his tenant, taking action that demonstrates his possession and control over the property.

This matter was placed on the March 25, 2014, argument list and argument was heard.

### Legal Standard

Pennsylvania Rule of Civil Procedure 1035.2 states:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury.

Further, under Pa.R.C.P. Rule 1035.3(a), the nonmoving party may not rest upon mere allegations or denials of the pleadings but must file a response within thirty (30) days after service of the motion. In other words, the nonmoving party has a clear and affirmative duty to respond to a motion for summary judgment. *Harber Phila. Ctr. City Office Ltd. v. LPCI Ltd. P'ship*, 764 A.2d 1100, 1104 (Pa. Super. 2000). Also, Pa.R.C.P. Rule 1035.3(d) specifically provides that "[s]ummary judgment may be entered against a party who does not respond." *Id.*

Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176 (Pa. 1999) (citing *Marks v. Tasman*, 589 A.2d 205 (Pa. 1991)). Summary judgment is only appropriate in the clearest of cases, because an order favorable to the moving party will prematurely end an action. *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. 1997) (citations omitted). The moving party has the burden of proving the non-existence of any genuine issue of material fact. *O'Rourke v. Pa. Dep't of Corr.*, 730 A.2d 1039, 1041 (Pa. Commw. Ct. 1999) (citing *Kee v. Turnpike Comm'n*, 722 A.2d 1123 (Pa. Commw. Ct. 1998)). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof...establishes the entitlement of the moving party to judgment as a matter of law." *Murphy*

*v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (quoting *Young v. PennDOT*, 744 A.2d 1276, 1277 (Pa. 2000)) (omission in original) (internal quotation marks omitted). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1041 (Pa. 1996) (citation omitted).

Under the *Nanty-Glo* Rule, summary judgment may not be granted where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony to establish the absence of a genuine issue of material fact. *Nanty-Glo Borough v. American Surety Co.*, 163 A.523, 524 (Pa. 1932); *see also Penn Center House, Inc. v. Hoffman*, 553 A.2d 900, 903 (Pa. 1989); *White v. Owens Corning Fiberglas, Corp.*, 668 A.2d 136, 142 (Pa. Super. 1995); *Garcia v. Savage*, 586 A.2d 1375, 1377-78 (Pa. Super. 1991).

A trial court's entry of summary judgment will only be reversed in instances where there was an abuse of discretion or an error of law by the trial court. *Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 795 (Pa. Super. 1999) (citing *Sebelin v. Yamaha Motor Corp.*, 705 A.2d 904, 906 (Pa. Super. 1998)).

## Discussion

I. Defendant PennDOT's Motion for Summary Judgment

Defendant PennDot argues that there are no genuine issues of material fact such that it should be granted judgment as a matter of law under the concept of sovereign immunity found in 42 Pa.C.S.A. § 8521 *et seq*. Specifically, PennDOT is protected from negligence actions by sovereign immunity, unless a cause of action

falls within one of the exceptions set forth in 42 Pa.C.S.A. § 8522(b). The following exception exists under the Sovereign Immunity Act with regard to highways:

(4) Commonwealth real estate, highways and sidewalks. — A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa.C.S.A. § 8522(b)(4).

"A plaintiff seeking to prevail in a negligence action against the Commonwealth must demonstrate that [the] claim is one that, if proven, would satisfy the common law requirements for a negligence claim and that one of the exceptions to sovereign immunity applies." *Lambert v. Katz*, 8 A.3d 409, 417 (Pa. Commw. Ct. 2010). Under the common law, the plaintiff must establish that: "(1) the defendant owed a duty of care to the plaintiff; (2) the duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages." *Bubba v. Dep't of Transp.*, 61 A.3d 313, 316 (Pa. Commw. Ct. 2013) (citing *Brown v. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa. Commw. Ct. 2011)). The question of whether the defendant owed a duty of care to the plaintiff is "purely a question of law." *Id.*

Here, the plaintiff contends in her amended complaint that the accident occurred due to a dangerous condition in and along Route 611. *See* amended complaint ¶¶ 14-16. She contends, furthermore, that the dangerous condition existed "along the area where the paved portion of the

roadway interfaced with the berm and/or perimeter of the traveled portion of the roadway within the PennDOT right-of-way and/or the overlap upon the property including the areas of ingress and egress for access to the property and the surrounding areas." *Id.* at ¶ 14. Under Pennsylvania case law, however, "the shoulder is not intended for vehicular traffic and, accordingly, [Penn]DOT owe[s] no duty to design, construct and maintain the shoulder drop-off." *Bubba,* 61 A.2d at 317; *see also Lambert,* 801 A.2d at 413-14.

We find that there are no issues of material fact regarding the responsibility of PennDOT for the alleged dangerous conditions of the roadway. No expert reports have been submitted by either the plaintiff or co-defendants which have identified any dangerous condition of the roadway that may have contributed to the accident at incident. Further, as PennDOT owed no duty to the decedent to design, construct or maintain the shoulder, it cannot therefore be found to have breached such a duty. We find as a matter of law that PennDOT did not owe a duty of care to the plaintiff/decedent.

We also note that none of the above-named parties have responded to the PennDOT's motion for summary judgment, despite their clear and affirmative duty to do so. We find that neither the plaintiff nor defendants Rotherham or JPMC have responded to PennDOT's motion for summary judgment, as is required under Pennsylvania law. *See Harber Phila. Ctr. City Office Ltd.,* 764 A.2d at 1104; *see also* Pa.R.C.P. Rule 1035.3(d). Finally, plaintiff has noted in her brief in response that she has no expert reports against and no objection to the dismissal of defendant PennDOT. *See* plaintiff's brief in response to defendants' motions for summary judgment at 5.

Therefore, defendant PennDOT's motion for summary

judgment is granted.

## II. Defendant Bracalente's Motions for Summary Judgment

Under Pennsylvania case law, summary judgment in favor of a defendant who has asserted contribution or indemnifications against an additional defendant requires summary judgment in favor of the additional defendant, as the claims are deemed moot. *See Guy M. Cooper, Inc. v. East Penn Sch. Distr.*, 903 A.2d 608, 619-20 (Pa. Commw. Ct. 2006). In the instant case, we grant summary judgment in favor of PennDOT for the reasons stated above. As such, we find that PennDOT's claims against Additional defendant Bracalente are deemed moot.

Further, we find that defendants Rotherham and JPMC have failed to file a response to defendant Bracalente's separate motion for summary judgment, as is required under Pennsylvania case law and the Pennsylvania Rules of Civil Procedure. *See Harber Phila. Ctr. City Office Ltd.*, 764 A.2d at 1104; *see also* Pa.R.C.P. Rule 1035.3(d). The plaintiff has also noted in her brief in response that she has no expert reports against and no objection to the dismissal of additional defendant Bracalente. *See* plaintiff's brief in response at 5. As summary judgment may be entered against a party that fails to respond, we grant Bracalente's separate motion for summary judgment.

Additional defendant Bracalente's motions for summary judgment are granted.

## III. Rotherham and JPMC Motions for Summary Judgment

### A. Ownership and Possession of the Property

Defendants Rotherham and JPMC both deny ownership of the property at the time of decedent's accident and both

further argue that they did not owe a duty to the decedent at the time of the accident.

By way of historical background, the record establishes that due to a default, JPMC instituted a foreclosure action against Susan Best for the failure to repay a 1999 mortgage. JPMC brought the foreclosure action on behalf of the Note Holders and Note Insurers of ABFS Mortgage Loan Trust 1999-3 (the "JPMC/1999-3 Trust"). Best was the title owner of the property. The foreclosure action was successful. The property was sold at a sheriff's sale to defendant Rotherham on February 9, 2007. The deed transferring the property to Rotherham was duly recorded on March 16, 2007.

On December 14, 2006, JPMC, as the Trustee of Best's second mortgage on the Property, executed in 2003 (the "2003-2 Trust"), commenced a second foreclosure action against Best. On March 2, 2007, the 2003-2 Trust served a foreclosure complaint on Best. Apparently, it was shortly after filing this second complaint that JPMC learned that it — JPMC — had already foreclosed upon the Property on behalf of the 1999-3 Trust and caused it to be sold to Rotherdam at the February sheriff's sale, resulting in the March 16, 2007 transfer. On behalf of the 2003-2 Trust, JPMC filed a petition to intervene and set aside the sheriff's sale of the property to Rotherham on April 1, 2007, *alleging improper notice of their own forced sale in February*.[2]

On April 19, 2007, Rotherham filed a counter-petition to intervene. On May 4, 2007, the court granted intervenor status to both the 2003-2 Trust and Rotherham.

---

2. Apparently, no one has been offended by the apparent conflict in which JPMC, on behalf the 2003-2 Trust, attacked the sheriff's sale brought by JPMC, on behalf of the 1993-3 trust, alleging improper notice.

The accident occurred on July 14, 2007.

On October 17, 2007, the JPMC/1999-3 Trust, the 2003-2 Trust, and Rotherham entered into a settlement agreement and release. Under this agreement: (1) the JPMC/1999-3 trust retained the proceeds from the sheriff's sale; (2) the 2003-2 trust agreed to pay Rotherham $227,600.00; (3) the property was conveyed to JPMC on behalf of the 2003-2 rrust; (4) both Rotherham and any tenant of the property were required to vacate the property by November 16, 2007; and (5) Rotherham joined in the agreement.

The consent order confirming the terms of the settlement agreement was signed by the Honorable F.P. Kimberly McFadden on October 25, 2003. The order decreed that the 2003-2 trust would be deemed the purchaser of the property at the sheriff's sale as of February 9, 2007 and that Rotherham's deed would be stricken from the record. On November 28, 2007, a correction deed was recorded, retroactive to the date of the sheriff's sale, February 9, 2007. This correction deed named Susan G. Best as the "grantor" and JP Morgan Chase Bank as the "grantee," indicating a direct change in ownership.

The correction deed, filed subsequent to the consent order, sets forth the legal ownership of the property at the time of the accident. Under the consent order, filed October 26, 2007, "petitioner, JP Morgan Chase Bank, as trustee under the Pooling and Servicing Agreement dated as of October 1, 2003, ABFS Mortgage Loan Trust 2003-2, [] shall be deemed the purchaser of the premises known as 1600 North Delaware Drive, Easton, Pennsylvania, sold at sheriff's sale on February 9, 2007." Motion for summary judgment of defendant James Rotherham, as executor of the estate of Albert P. Rotherham, exhibit "C" — consent order. Further, the prior sheriff's deed, which indicated

Rotherham's ownership of the property, was stricken from record. *Id.* Finally, the petitioner, JPMC, as the *bona fide* holder of the mortgage, was not required to pay transfer taxes on the property. *Id.*

Under *Dadona v. Thorp*, 965 A.2d 1244 (Pa. Super. 2000), we have the authority to construct and interpret deeds. In the instant case, the correction deed, recorded November 28, 2007, lists the "grantor" as Susan G. Best and the "grantee" as JP Morgan Chase Bank. Further, the addendum to realty transfer tax statement of value cites that "date of sale" as February 9, 2007. The recorded correction deed effectively indicates a transfer of ownership of the property directly from Best to JPMC on February 9, 2007, with no mention of Rotherham.

Next, we examine whether Rotherham had possession and control over the property at the time of the accident such that he would owe a duty of care to the decedent. In order for a plaintiff to prevail in a negligence action, she must establish that: "(1) the defendant owed a duty of care to the plaintiff; (2) that duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). Under Pennsylvania common law, the question of whether a duty exists in purely a question of law. *See Brown v. Com. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa. Commw. Ct. 2011).

In opposing the motion for summary judgment, the plaintiff relies on Section 368 of the Restatement (Second) of Torts, among other premises liability theories, for her theory of liability, which states that:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so

near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel.

....

Restatement (Second) of Torts § 368 (1965).

Section 328E of the Restatement (Second) of Torts sets forth the definition of a "possessor of land":

A possessor of land is (a) a person who is in occupation of the land with the intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it; or (c) a person who is entitled to immediate occupation of land, if no other person is in possession under clauses (a) or (b).

*Id.* § 328E.

Whether a party is a "possessor of land" is a determination to be made by the trier of fact. *See Blackman v. Fed. Realty Inv. Trust*, 664 A.2d 139, 142 (Pa. Super. 1995). Further, "[w]here the alleged 'possessor of land' has filed a motion for summary judgment and asserted that the non-moving party has not produced evidence to establish that the moving party is a 'possessor of land,' the non-moving party must identify evidence establishing that fact in its response to the motion." *Walinsky v. St. Nicholas Ukrainian Catholic Church*, 740 A.2d 318, 320 n. 4 (Pa. Commw. Ct. 1999) (citing Pa.R.C.P. No. 1035.3(a)(2)).

In Pennsylvania, further, "[a] party who possesses but does not own the land may be liable to a plaintiff for harm caused to the plaintiff by a defect on the land." *Davis v. City of Philadelphia*, 987 A.2d 1274, 1279 (Pa. Commw. Ct. 2010) (citing *Blackman v. Fed. Realty Inv. Trust*, 4664 A.2d 139, 142 (Pa. Super. 1995)). Further, liability follows possession and control, regardless of ownership or legal title. *See Bagley v. City of Philadelphia*, 25 A.2d 579, 582 (Pa. Super. 1942). "Thus, duty does not establish possession; rather, possession establishes a duty." *Leichter v. E. Realty Co.*, 516 A.2d 1247, 1251 (Pa. Super. 1986) (Kelly, J. concurring). In other words, "occupation and control (physical possession), rather than title (the legal right to possession), determine possession under Section 328E." *Id.*

Here, defendant Rotherham asserted that plaintiff failed to produce evidence that Rotherham possessed the property at the time of the accident. In response, the plaintiff identified the following as evidence of possession: (1) On July 14, 2007, Rotherham was the record owner of the property by the sheriff's deed recorded March 16, 2007; (2) thereafter, Rotherham permitted Best to remain on the property and continue the operation of My Little Gypsy Rose Restaurant and Banquet Hall while he attempted to find a purchaser; (2) Rotherham took an interest in the property by filing UCC financial statements and taking responsibility for the restaurant's liquor license and contents; (3) Rotherham undertook repairs to the property, in that he filed an application with a builder for a building permit after an errant automobile struck the building in October of 2007; and (4) Rotherham agreed, along with Best, to give up possession of the property on or before noon on November 16, 2007, pursuant to the settlement agreement and consent order. *See* plaintiff's brief in response at 13-14. From this evidence, plaintiff argues

that a jury could find that defendant Rotherham possessed the property at the time of the accident and owed a duty of care to the decedent.

Unfortunately for Rotherham, the settlement agreement and the consent order do not have the effect of a time machine, which would have cancelled or wiped away the status of the parties on July 14, 2007, when the decedent had his accident. The conditions of the property and status of the ownership of the property at that moment are frozen in time. At the moment of the accident, Rotherham was the legal owner and exercised possession of the property.

The legal impact of the settlement agreement and the consent order does not shield Rotherham from answering to the decedent for the condition of his property on July 14, 2007. However, the documents may have some relevance related to indemnity or contribution between JPMC and Rotherham.

We find that a genuine issue of material fact exists regarding possession of the property, which precludes us from granting Rotherham's motion for summary judgment. Therefore, defendant Rotherham's motion for summary judgment is denied.

With regard to JPMC's motion for summary judgment, in support of its motion, JPMC asserts that it is entitled to judgment as a matter of law because it did not own or possess the property at the time of the accident, July 15, 2007, despite the correction deed's retroactive grant of ownership. Therefore, JPMC argues, it did not owe the decedent a duty of care. Instead, it claims, Rotherham and/or Best had possession or control over the property at the time of the accident. JPMC also argues that it cannot be subject to liability without such possession and control over the property.

JPMC further asserts that it was Rotherham who took action with the property indicating possession and control, including conducting repairs on the property, actively trying to sell the property, filing a UCC statement, and agreeing with Best that she would continue to reside on the property during this time period. Finally, JPMC contends that it acted merely as a mortgagee of the property and that it did not exercise sufficient control over the property to find it owed a duty of care to the decedent.

In response, the plaintiff contends that JPMC is "voluntarily legally responsible" for the property at the time of the accident because JPMC signed the consent order, under which it accepted ownership of the property at the time of the accident. In arguing such, the plaintiff invokes the doctrines of waiver and collateral estoppel.

Rotherham argues in response that JPMC voluntarily accepted ownership in and possession of the property at the time of the accident by signing the settlement agreement and the consent order. Rotherham also argues that JPMC acted as if it were the owner throughout the period at issue because JPMC conducted periodic inspections of the property. Accordingly, Rotherham argues that JPMC, by accepting all rights and responsibilities of ownership in the settlement agreement and consent order, as well as through the nature of its possession and control of the property by its periodic inspections, owed the decedent the duty of care.

As set forth above, mere ownership does not create a duty; such a duty is instead predicated upon possession and control of the property in question. *See Bagley*, 25 A.2d at 582.

We turn to the record in determining whether JPMC possessed the property at the time of the accident, such

that JPMC could be found liable. Both the plaintiff and Rotherham point to JPMC's periodic inspections of the property as evidence of possession thereof. JPMC undertook such inspections of the property under its role as the trustee for the mortgagees.

A mortgagee can be found to be in possession of property, establishing liability. *See Sansotta v. City of Pittsburgh*, 199 A.164, 165 (Pa. 1938). However, "[m]erely to say that a mortgagee is in possession of property is not enough to fix him with responsibility for its condition and to impose upon him a duty to repair." *Id.* Generally, the owner or the tenant in possession is responsible for the property's condition and the duty to repair. *See id.* In order to establish liability on the party of the mortgagee, one must establish that the mortgagee is in actual control or possession. *See id.* The mere receipt of rentals is insufficient. *See id.*

In order to show that a mortgagee "exercised acts of dominion over the property, which any owner of a similar property would do under the circumstances," requires an examination of the facts. *Zisman v. City of Dusquene*, 18 A.2d 95, 97 (Pa. Super. 1941). Indicators of possession include: "inspection of the premises, either personally or through an agent, making of repairs, arranging leases, collection of rents, eviction of tenants, payment of all expenses of maintenance, etc." *Id.*

With regard to inspections, the record indicates that JPMC sent inspectors to the property on a monthly basis from April 30, 2004, until December 21, 2007. *See* J.P. Morgan Corporate Designee Transcript, at 22:24-24:2; Transcript of deposition testimony of Peter D. Katsikas, J.P. Morgan Chase Bank, through ECM's corporate designee, at 9:15-11:20; Chase/EMC Inspection Reports. According to JPMC's corporate designee, the property

preservation unit organized these inspections "to see if the house...is properly maintained and there is also the broker pricing opinions which also give the value but also give us information on the property as well." J.P. Morgan Corporate Designee Transcript, at 23:7-10. Apparently, such inspections are standard in the case of default on the contract. *See id.* at 24:5-10.

Here, JPMC did not make repairs, arrange leases, collect rents, or pay all expenses maintenance. Although under the settlement agreement Rotherham and Best were required to leave the premises on November 16, 2007, it is not alleged that JPMC possessed the requisite authority over the Property at the time of the accident to evict any tenants from it.

Further, the terms of the settlement agreement & release relevant to the determination of possession are as follows:

> ....

> 4. Intervenor [Rotherham] and any tenant or occupant of the premises shall vacate the premises on or before 12:00 noon on November 16, 2007. All items of personal property on the premises at the time of sheriff's sale and/or remaining on the premises as of 12:00 noon November 16, 2007 will be considered to be abandoned by said intervenor and intervenor shall not assert any right, title or interest therein. Intervenor, for himself, and on behalf of any tenant of his, *agrees that petitioner [JPMC] is entitled to access and possession of the premises as of 12:00 noon on November 16, 2007.*

> Petitioner may immediately list the premises for sale and shall have full access to inspect and show the premises so long as the times and dates are reasonable and do

not interfere with the normal or ongoing operations or events scheduled by the present tenant or occupant.

Settlement agreement & release (Oct. 17, 2007) (emphasis added).

The terms set forth above reveal that JPMC did not have access and possession of the property before that date, November 16, 2007.

We note that JPMC did conduct monthly inspections of the property. However, we find that these inspections do not rise to the level of possession of the property, as JPMC did not use these inspections as a tool to exercise control over the property by making repairs or evicting tenants for improper maintenance, and it commenced such inspections before any of the parties allege that it assumed possession and control over the property. No other evidence has been set forth by the plaintiff in response to the motion for summary judgment to show that JPMC possessed the property.

With regard to the settlement agreement and consent order, these documents suggest that on October 25, 2007, JPMC retroactively purchased Rotherman's interest in the property as of the date of the sheriff's sale on February 9, 2007. The real estate transaction of October 25, 2007, occurred after the accident and the rise of the negligence claim related to the condition of the property. There is no factual dispute as to the calendar events.

The settlement agreement and consent order are silent as to the events of July 14, 2007. Regardless, we can find no legal support for the concept that one entity can be retroactively substituted for another tortfeasor, without the agreement of the plaintiff. Here, the plaintiff did not sign or agree that the settlement agreement resolved the issue of liability for the property on July 14, 2007. Thus,

we cannot allow the defendants' private agreement to determine the issues of liability and/or duty of care.

There remains an open issue regarding the possible legal effect of the settlement agreement and consent order related to contribution and indemnity between Rotherham and JPMC. However, the resolution of that issue is for another day.

As JPMC was neither the possessor of the property nor the owner of the property at the time of the accident, it did not owe a duty to the decedent. No genuine issues of material fact exist with regard to the causes of action against JPMC. JPMC is entitled to judgment as a matter of law. Therefore, defendant JPMC's motion for summary judgment is granted.

### B. Negligence Per Se Claim

Any reasonable review of plaintiff's complaint indicates that plaintiff has not set forth a negligence *per se* claim in her amended complaint. In fact, plaintiff acknowledges that she has not alleged negligence *per se* as a cause of action. Apparently, this concern has been given life by plaintiff's expert, who has volunteered in his expert report that there may have been a violation of a statutory duty to maintain the property. Rotherham and JPMC argue that the plaintiff's negligence *per se* argument fails as a matter of law, because the motor vehicle accident at issue was not contemplated by the regulation cited to in the plaintiff's expert report.

Ultimately, this is not an issue for summary judgment, but rather an evidentiary issue to be raised before the trial judge. Defendants' motions for summary judgment with regard to the phantom negligence *per se* claim is non-justiciable.