Joseph Glase, by his next friend, Alexis Limeburner, Appellant, v. Philadelphia.

*Negligence—Contributory negligence—Municipalities.*

Near a river, on a public promenade, was a group of twenty or thirty columns each three feet in diameter, and about twenty-five feet in height. Close to one of these columns and back of it was a manhole, used for putting in coal, inclosed by a plate eighteen inches in diameter in the center, being vertical when the hole was open, and horizontal, or on a level with the surrounding surface, when closed. Plaintiff, a boy sixteen years of age, was on the land side of the columns, when another boy cried that a big fish had been caught. Plaintiff ran towards the river, and as he passed one of the columns, stepped on the plate, which turned vertically, and he fell astride of it, injuring himself seriously. Plaintiff testified that he saw that the plate was half way on when he was running towards it. He also said " didn't see it when I stepped on it, I imagine it was half way on." *Held*, that although the plaintiff's statements were not consistent, the question of his contributory negligence was for the jury. *Held also* that the question of the city's negligence was for the jury.

If this manhole was covered, as plaintiff claimed, by a revolving lid, which, being unsecured, turned when stepped upon, it was a man trap, the very design of which was negligence. Its character and design were questions for the jury. It could hardly be said that the city did not know that its own contrivance, thus unsecured, and thus placed, was highly dangerous to the public invited upon that roof. It was not compelled to provide any such place of rest and pleasure, but when it did so, and invited the public to go upon it, clearly, according to all the cases, it owed to the public the duty of at least ordinary care. Per DEAN, J.

Argued April 3, 1895. Appeal, No. 239, Jan T., 1895, by plaintiff, from order of C. P. No. 1, Phila. Co., June T., 1893, No. 776, refusing to set aside nonsuit. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass to recover damages for personal injuries.
The facts appear by the opinion of the Supreme Court.

*Error assigned,* among others, was refusal to take off nonsuit.

*A. W. Horton* and *David W. Sellers,* for appellant, cited, as to contributory negligence : Oakland Ry. v. Fielding, 48 Pa. 230; Kehler v. Schwenk, 144 Pa. 348; 4 Am. & Eng. Ency. of Law, p. 46 ; cited as to negligence of the city : Girard Life Ins. Co. v. Phila., 88 Pa. 393 ; 15 Am. & Eng. Ency. of Law, 1155 ; Pittsburg v. Grier, 22 Pa. 54 ; Erie v. Schwingle, 22 Pa. 384 ; Western Saving Society v. Phila., 31 Pa. 175; Jones on Negligence of Municipal Corporations, 75 ; Oliver v. Worcester, 102 Mass. 489; Eastman v. Meredith, 36 N. H. 295 ; Shuter v. Philadelphia, 3 Phila. 228: Briegel v. City, 135 Pa. 451; 2 Dillon, Municipal Corporations, sec. 9 ; Wilkins v. Village of Rutland, 61 Vt. 336 ; Smith on Negligence, *Text-Book Series, 88.

*Howard A. Davis, Charles F. Warwick* with him, for appellee, cited, on the question of contributory negligence : Baltimore R. R. v. Layer, 112 Pa. 414 ; Nagle v. Allegheny Valley R. R., 88 Pa. 35 ; Gillespie v. McGowan, 100 Pa. 144 ; Hydraulic Works v. Orr, 83 Pa. 332; Wharton on Negligence, sec. 440 ; Forks Twp. v. King, 84 Pa. 230 ; King v. Thompson, 87 Pa. 365 ; City of Erie v. Magill, 101 Pa. 616 ; Pittsburg Southern Ry. v. Taylor, 104 Pa. 306 ; Hill v. Tionesta, 146 Pa. 11 ; Cougle v. McKee, 151 Pa. 602; Hoag v. R. R., 85 Pa. 293 ; cited on the question of the city's negligence : Burns v. City of Bradford, 137 Pa. 361 ; Davis v. Corry City, 154 Pa. 598 ; Lohr v. Phillipsburg Borough, 156 Pa. 246 ; Lohr v. Phillipsburg Borough, 165 Pa. 109.

OPINION BY MR. JUSTICE DEAN, July 18, 1895 :
A number of adjoining buildings on the Schuylkill river,

known as Fairmount Water Works, were erected and owned by the city of Philadelphia; they are used by the city as a pumping station; the natural surface of the ground slopes somewhat abruptly to the river, so that the roof of the engine-house, at the rear, is on a level with the ground; the roofs of all the buildings are on a level with that of the engine house, the whole forming a roof area of four hundred by fifty feet. This large roof surface looking out upon the river is used by the public, upon the invitation of the city, as a place of rest and pleasure. In the center is a row of twenty or thirty columns, each three feet in diameter, and about twenty-five feet in height; close to one of these columns, and back of it, is a manhole, used for putting in coal, and closed by a plate eighteen inches in diameter in center, which is vertical when the hole is open, and horizontal, or on a level with the roof, when closed. On May 30, 1889, being Decoration Day, many of the public were on the roof, among them the plaintiff, a boy about sixteen years of age. He was on the land side of the columns, when another boy cried that a big fish had been caught; plaintiff, with other boys, ran towards the river side to see the fish, when, just as he passed one of the columns, he stepped on the plate, it turned vertically, and he fell with his full weight astride of it, very seriously and permanently injuring him. Suit was brought against the city for damages, because of negligence in not protecting the manhole by a proper covering securely fastened.

At the trial, the learned judge of the court below nonsuited the plaintiff, on the grounds that: 1. Plaintiff was guilty of contributory negligence. 2. The defendant was not shown to have had actual or constructive notice of the insecure condition of the manhole.

The plaintiff appeals, and argues that the question of contributory negligence was for the jury, and that the very design and operation of the plate was evidence of notice to the city of the dangerous condition of the covering of the manhole.

The boy, Joseph Glase, testified, that he was standing right back of the colonnade, leaning on the rail, then this question in chief was put to him: " Q. What were you doing, standing there? . A. I was talking there for awhile, and one of the boys hollered, there was a girl's hat blew overboard, and another

one hollered, there is a big fish caught, and as I ran to see, I stepped in this hole, and the lid went in."

On cross-examination, he made these answers: " Q. You say you were standing talking along the rail? A. Yes, sir. Q. When the girl's hat blew overboard, did you run around the post? A. No, sir; not until one of the boys hollered, there was a fish caught, and then I ran around the post. Q. Why did you run around the post, when you were standing along the railing? A. I don't know—because the rest of them ran around the post, and I ran to get ahead of them. Q. To see the fish? A. Yes, sir."

Then further on in his testimony: " Q. Were you ahead of these boys, or were they behind you? A. No; they were ahead of me. Q. And your companions did not see anything of it until you were in the hole? A. Until I was in the hole, and one of them came and helped me out. Q. Was the lid on the hole? A. No, sir; it was about halfway on. Q. When you were running on it? A. When I stepped on it. Q. How did you know it was only halfway on it? A. When I stepped on it. Q. When you stepped on it? A. No, sir, didn't see it when I stepped on it. I imagine it was halfway on."

He then says, he saw it was halfway on when he was running towards it. His companions testified to the running, when the cry of "fish caught" was raised, in substantial accord with the plaintiff. It therefore clearly appears, they were standing, first, on the side of the columns furthest from the river, when the cry was raised of "fish caught." Boys of this age, and perhaps men, would be excited by such a cry, and they started to run for the side next the river; the column was between them and the manhole, and the manhole was close to the column; it was not directly visible until they partially passed the column; then another step, and he was on the revolving plate or disk. We think the question whether the boy exercised care according to the circumstances, was for the jury. True, he says, in part of his examination, he saw the lid was half off when he was running; but his position, astride of the vertical plate, when taken up by his companion, and there are several witnesses to this, indicates that he probably stepped on the side, and the plate then turned; if the accident occurred by stepping on the side of a closed but unsecured revolving

plate, is it probable it was turned when he stepped in the hole? If it was half off, then it must have been vertical. His evidence is not consistent; he first states, he imagines it was half off, and then that he saw it when he was running. The excitement of the boy, the speed at which he ran, the partial concealment of the manhole by the column, and his whole statement, should, it seems to us, have been submitted to the jury, to determine whether there was an absence of care according to the circumstances. In Ely v. Railroad Co., 158 Pa. 233, the testimony of plaintiff as to whether he stopped, looked and listened, before he drove on a railroad crossing, was somewhat contradictory, but Justice MITCHELL, in delivering the opinion of the court, says:

" This (plaintiff's testimony) was contradictory, and the net result of it by no means clear. On part of it, he was plainly entitled to go to the jury, on the other part, equally plainly, he was not. Under these circumstances, the case must go to the jury, whose province it is to reconcile conflicting statements, whether of the same or different witnesses, or to draw the line between them, and say which shall prevail."

As to the second question, that was also for the jury. If this manhole was covered, as plaintiff claimed, by a revolving lid, which, being unsecured, turned when stepped upon, it was a mantrap, the very design of which was negligence. Its character and design were questions for the jury. It could hardly be said that the city did not know its own contrivance, thus unsecured, and thus placed, was highly dangerous to the public invited upon that roof. It was not compelled to provide any such place of rest and pleasure, but when it did so, and invited the public to go upon it, clearly, according to all the cases, it owed to the public the duty of at least ordinary care.

The judgment is reversed, and a procedendo awarded.