Styer et al. *v.* Reading, Appellant.

Argued April 15, 1948; reargued May 25, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Elliott B. Goldstan,* Assistant City Solicitor with him *C. Wilson Austin,* City Solicitor, for appellant.

*Charles H. Weidner,* with him *Stevens & Lee,* for appellees.

OPINION BY MR. JUSTICE DREW, September 27, 1948:

This is an action in trespass by a father, as guardian of his minor child, and for himself and wife, for damages sustained by them as a result of personal injuries to the child at a playground conducted by defendant, City of Reading. The case has been tried twice. The first trial resulted in verdicts for plaintiffs, but, after argument, the learned court below awarded a new trial. The second trial also resulted in verdicts for plaintiffs. Defendant did not question the fairness of the trial or the amount of the verdicts by moving for a new trial, but did file a motion for judgment n. o. v. After that motion was discharged and judgments were entered on the verdicts, defendant took these appeals.

Viewing the evidence and all inferences deducible therefrom in the light most favorable to plaintiffs, as we are required to do in passing upon this motion for judgment n. o. v., the following appear to be the pertinent facts: During the summer months for many years, the Recreation Board of defendant Municipality conducted a public playground at 16th and Haak Streets, in the City of Reading, on premises owned by Reading School District. This playground, which was under the complete control and supervision of defendant's employes, consisted of a large open space adjoining a school building and also of a room in the basement of this school, 28 feet 5 inches long, 27 feet 5 inches wide

and 9 feet high. A doorway and a descending flight of four steps led from the outdoor portion of the playground to this basement room. To the right of this doorway, a part of the room, 12 feet by 15 feet, was partitioned off for use as a boiler room, and ashes and rubbish were kept in one corner next to the partition. The remaining L-shaped space of the room was dimly lighted by five small basement windows. In one corner there was a handicraft table. Volleyball and badminton equipment, including shuttlecocks and racquets, as well as other playground material, were not stored away, but rather were lying in the open about the room, easily available to the children, who, with defendant's permission, frequented this room every day during playground hours. For a long time this room had been used for handicraft work and frequently some of the children played there with a volleyball or batted a shuttlecock back and forth with badminton racquets. That the children had played, for at least three weeks prior to the accident, with this badminton equipment in this room was known to the playground leader, Miss Gehris.

At about eleven o'clock on the morning of July 22, 1942, minor plaintiff, then eleven years of age, was lawfully in this basement room with one Richard Von-Neida and eight other children. Seeing defendant's badminton equipment lying on the floor, Richard, who was also eleven years old at that time, suggested to minor plaintiff that they bat a shuttlecock back and forth between them with badminton racquets. Neither child had ever played the game of badminton. They proceeded to bat the shuttlecock to and fro, without a net between them. While they were thus playing, minor plaintiff stood inside the room with her back to the door and Richard faced her about seven feet away. Defendant's playground leader was on duty and present in the room when these children started their play and she remained there for some time thereafter, but she did not endeavor to stop them or to warn them of the

possible danger involved. After playing for about five to ten minutes, minor plaintiff told Richard that she was quitting and tossed the shuttlecock to him with her hand and glanced away. Immediately, he batted the shuttlecock back again and the rubber part struck minor plaintiff in the left eye, injuring it so that, after several operations, it had to be removed.

Defendant maintains that it is entitled to judgment n. o. v. for three reasons: (1) that there was no negligence on its part; (2) that the proximate cause of the injury to minor plaintiff was the independent, intervening act of Richard VonNeida and (3) that minor plaintiff was guilty of contributory negligence as a matter of law. We shall examine these arguments in the order presented.

In considering whether defendant was negligent, our first inquiry will be to determine what duty of care our law places upon a municipality in regard to the safety of children-invitees present upon its playgrounds. In *Paraska v. Scranton,* 313 Pa. 227, 229, 169 A. 434, we set forth the rule of law which is applicable here: "Where a city undertakes to manage and supervise property, such as public parks and playgrounds, it must take care to keep that property in a reasonably safe condition for those invited to come upon it, and this is particularly true in the case of children in playgrounds." A municipality is not an insurer of the safety of children playing on its public playgrounds. However, it is well settled that in maintaining parks and playgrounds a city must exercise reasonable care: *Honaman v. Philadelphia,* 322 Pa. 535, 185 A. 750; *Weber v. Harrisburg,* 216 Pa. 117, 64 A. 905; *Rockett v. Philadelphia,* 256 Pa. 347, 100 A. 826; *Glase v. Philadelphia,* 169 Pa. 488, 32 A. 600; *Barthold v. Philadelphia,* 154 Pa. 109, 26 A. 304.

In *Honaman v. Philadelphia,* supra, and again in *Stevens v. Pittsburgh,* 329 Pa. 496, 198 A. 655, we cited with approval the Restatement of the Law of Torts,

Vol. II, §318, and we are of opinion it is applicable here. That section reads: "If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control."

The pivotal question in this case is: Did the evidence warrant the submission to a jury of the question whether or not defendant exercised reasonable care for the safety of minor plaintiff? Our answer must depend upon a detailed analysis of the factual situation. Defendant was operating this playground under the exclusive control of its playground leader at the time the injury occurred. She, representing the City, had the duty to use every reasonable effort to control the conduct of all the children present there that day, including that of Richard and minor plaintiff. Other children, playing in the room, testified that the playground leader was present there during at least part of the time that minor plaintiff and Richard were batting the shuttlecock to each other with the racquets and that she made no effort to stop them.

The place in which they were playing obviously was hazardous for such activity, by reason of the poor lighting conditions, and of the restricted space available (which was but a fraction of the size of a regulation badminton court). The result of their inability to move freely about was that each player attempted to hit the shuttlecock directly toward his opponent rather than away from him as in a normal badminton game. The manner in which minor plaintiff and Richard were playing was also dangerous. The close proximity of

the children to each other,[1] the use of an outdoor shuttle-
cock with a hard rubber tip, instead of an indoor one
with a cork tip in the still air of this room, and the
absence of a badminton net, all were circumstances
which helped to create a dangerous situation. The sig-
nificance of the lack of a regulation net is that, when
present, it offers some protection to the badminton
players. When a shuttlecock is struck hard and follows
a straight, flat trajectory toward the opposing player it
is caught in the net which is erected between them. All
these facts and circumstances, when considered together,
show clearly that these children were allowed to con-
tinue playing in a situation of obvious danger.

There is no doubt that the playground leader knew
that she had the authority and ability to control these
children. However, the questions to be determined,
under the facts of this case, are: Would a reasonably
prudent person in her position have known of the neces-
sity and opportunity for exercising this control, and,
Was the conduct of the children a foreseeably dangerous
activity which was creating an unreasonable risk of
bodily harm to them? The answers to these questions
are not so clear that they can be ruled on as a matter
of law, but are questions upon which there may be a
reasonable difference of opinion, and, consequently, are
questions solely for determination by a jury. The jury
found that defendant was negligent and we are of
opinion that the testimony was more than ample to
support its conclusion.

We find no merit in the second contention of defend-
ant that the independent, intervening act of Richard
VonNeida was the proximate cause of the injury to
minor plaintiff. It was not extraordinary that Richard
would strike the shuttlecock immediately when minor

---

[1] Defendant in its printed brief makes the following frank admis-
sion: "The closeness of the positions in which the players were
engaged, furnished the background of danger. This accident hap-
pened because they were only seven feet apart."

plaintiff tossed it to him the last time. Children must be expected to act upon immature judgment, childish instincts and impulses; others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly: *Rachmel v. Clark,* 205 Pa. 314, 54 A. 1027; *Fehrs v. McKeesport,* 318 Pa. 279, 178 A. 380. Richard was engrossed in the play which was being completed. It was for the jury to determine whether his act was a normal response to the stimulus of the situation created by defendant's negligent conduct. See Restatement of the Law of Torts, Vol. II, §447.

Nor do we agree with defendant's final contention that minor plaintiff was guilty of contributory negligence as a matter of law. She had never played badminton nor had she seen the shuttlecock used in the basement room. She did not realize that there was danger in the manner and under the conditions she was playing with Richard. While there was testimony that at times such play in the room was forbidden, there is no evidence that minor plaintiff knew of such prohibition. We have repeatedly said that only in clear cases, where the facts are settled and there can be no reasonable doubt as to the inferences to be drawn, can a court declare contributory negligence as a matter of law: *McCreery v. Westmoreland Farm Bureau,* 357 Pa. 567, 55 A. 2d 399. This is not such a case, and, therefore, the question as to minor plaintiff's contributory negligence was for the jury. Particularly is this so, since she was not quite twelve years of age at the time of the accident. In this connection, we said, in *Fedorovich v. Glenn,* 337 Pa. 60, 64, 9 A. 2d 358: "The question of contributory negligence of a child twelve years of age is particularly one for the jury under the decisions of this Court."

Judgments affirmed.

Mr. Justice PATTERSON filed a dissenting opinion in which Justice ALLEN M. STEARNE joins.

DISSENTING OPINION BY MR. JUSTICE PATTERSON:

The law requires that a municipality shall exercise reasonable care in the maintenance of its playgrounds and in the supervision of their use by the public: *Novak v. Ford City Borough*, 292 Pa. 537, 141 A. 496; *Paraska v. Scranton*, 313 Pa. 227, 229, 169 A. 434; *Lemak v. Pittsburgh*, 147 Pa. Superior Ct. 62, 64, 23 A. 2d 354. But the evidence must be such as will support a finding that this duty has been violated, with resultant injuries, before responsibility attaches. A municipality is not an insurer of the safety of children in playgrounds. Thus, in *McCallister v. Homestead Borough*, 322 Pa. 341, 185 A. 583, an action for the death of a child who was drowned when he fell off a float in a public swimming place maintained by the borough, during an off-hour of the lifeguard, this Court said (opinion by Mr. Justice LINN), at p. 343: "Plaintiffs rely on the rule recently applied in Paraska v. Scranton, 313 Pa. 227, 229 . . . that 'Where a city undertakes to manage and supervise property, such as public parks and playgrounds, it must take care to keep that property in a reasonably safe condition for those invited to come upon it, and this is particularly true in the case of children in playgrounds' . . . But the evidence does not support a finding that the borough failed in performing that duty. The borough is not an insurer. A duty must appear before responsibility attaches . . . There is not sufficient evidence of notice of the use of the float by small children when the guard was not in attendance; *an occasional instance does not impose general liability . . . The probability of harm was not so obvious as to render defendant responsible for failure to anticipate it . . .*" (Italics supplied). See also *Miller v. Philadelphia*, 345 Pa. 1, 25 A. 2d 185; *Gleason v. Pittsburgh Housing Authority*, 354 Pa. 381, 47 A. 2d 129.

Restatement of Torts, section 318, cited by the majority, reads: "If the actor permits a third person to use land or chattel in his possession otherwise than as a

servant, he is, *if present,* under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control." (Italics supplied). Comment (b) under this section states: "The rule stated in this Section is applicable *where the possessor of a chattel or of land is present when the chattel is being used or the activity being carried on with his permission,* and when therefore, he has not only the ability to control the conduct of the third person as possessor, but also the opportunity to do so." (Italics supplied). Regarding the duty to anticipate dangerous use, it is said, in Comment (c): "If the chattel is one which can be safely used only if extreme caution is employed, or if one in possession of land permits a third person to conduct an activity thereon which is highly dangerous unless great care is taken, he may properly be required to exercise constant vigilance to be able to exercise his control over the third person when and if the occasion for it arises. *On the other hand, if the character of the chattel or its permitted use, or the activity upon the actor's land is of such a character as to be dangerous only under particular conditions and in particular situations, the actor is required to exercise vigilance only if there is a reasonable probability that such a condition or situation will arise."* (Italics supplied). And, in Comment (d), it is stated: "If the third person permitted to use the actor's chattel *persistently* uses it in a manner dangerous to others, the possessor may be required to terminate his consent to its use in order to escape liabilty for any harm done by the *further* dangerous use of the chattel." (Italics supplied).

On the present record it is undisputed that appellant's playground leader was not present in the basement room at the time of minor appellee's injury. She left the basement room shortly after minor appellee and the boy started batting the shuttlecock to and fro, and had gone out onto the playground, to a handicraft table some distance away. There is no proof of anything occurring prior to the accident or during the play from which minor appellee's injury could have been anticipated by the most alert playground leader or attendant. The mere batting of the shuttlecock, which is all that occurred in the playground leader's presence, was not an inherently dangerous activity requiring constant vigilance. Almost daily for a period of three weeks prior to the accident the children had batted the shuttlecock in precisely the same manner and under exactly the same conditions, without injury to any child. Light was provided through five windows and the open door. The room was regularly used for handicraft purposes, and it may be assumed the lighting conditions were also adequate for the children to see each other and the shuttlecock as they batted it to and fro. True the batting back and forth of the shuttlecock by these children was not strictly in accordance with the rules governing the playing of a regulation game of badminton, in that they were using an outdoor shuttlecock indoors, without a net, and where the space available was less than specified for a regulation badminton court. But it cannot seriously be contended that any of these things constituted a violation of any rules designed for the safety of the players, for it is a matter of common knowledge that in badminton and similar games the play is frequently at close range, whether the game be played indoors or outdoors. So far as the record discloses, the space available and conditions were entirely adequate for the activity engaged in, which was not the playing of a regulation badminton game but the mere batting of the shuttlecock. *Moreover, it was not during*

*the course of the play that minor appellee's injury befell
her. She had told the boy that she was quitting the
game and tossed the shuttlecock to him.*[1] Seeing that
he held the shuttlecock in his hand, and assuming he had
also quit, she glanced away, but the boy, who was then
eleven years of age, despite minor appellee's announce-
ment that she was unwilling to continue the game, which
he heard, and despite the fact that she had turned her
head away and was looking in another direction, which
he observed, without warning and without cause batted
the shuttlecock at her so that it struck her in the eye.[2]
*Harm came to minor appellee only after danger was
created by this impulsive, unprovoked, prankish act of
the boy, of which nothing whatever in his prior conduct
or that of minor appellee gave warning, after the game
had been completed* and at a time when appellant's
playground leader was not present and therefore had
neither the ability nor the opportunity to act.

There is nothing in any of the cases cited by the
majority to warrant extending the range of liability

---

[1] Minor appellee testified as follows: "Q. The last time after
you came in from running after the shuttlecock, which had gone
out the door, you decided to quit and you said to Richard that you
were quitting? A. Yes. Q. And you threw the shuttlecock to him?
A. I tossed it to him. Q. You mean with your racquet or with your
hand? A. With my hand. Q. And then you looked away? A. I had
my head in the same position, but I glanced away . . . Q. Did you
see him get it? A. Yes. When I tossed it to him he had it in
his hand."

[2] Richard VonNeida testified: "Q. And finally Miss Styer decides
to quit or tosses the shuttlecock to you and says, 'I am quitting'; is
that right? A. I heard she said something about quitting. Q. Did
you hear the word 'quitting'? A. She said 'quit'. Q. She said, ' quit';
is that right? A. Yes . . . Q. And at the time when she wasn't
looking, and when the play was over, you struck it again and hit
her in the eye; is that right? A. I didn't strike it with great force
because we were close together. Q. Did you do that or didn't you?
Was she looking at you when you hit it the last time? A. She glanced
away. Q. And you hit it and hit her in the eye with it; is that
right? A. Yes."

to a situation such as that here presented. *Paraska v. Scranton,* supra, an appeal from judgment for defendant upon an affidavit of defense raising questions of law, decided only that the rule of municipal immunity for liability for negligent maintenance did not apply to accidents occurring in public playgrounds. *Honaman v. Philadelphia,* 322 Pa. 535, 185 A. 750, held that failure to erect a backstop or screens along the highway bordering a park constituted an actionable violation of a *statutory* duty imposed by the Act of 1870, P. L. 451, 53 PS 6681. *Weber v. Harrisburg,* 216 Pa. 117, 64 A. 905, decided it was not error to refuse binding instructions for defendant in an action for injuries caused by a mooring cable permitted by the city to be stretched across a public pathway. In *Rockett v. Philadelphia,* 256 Pa. 347, 100 A. 826, the pivotal question was whether at the time of the accident the speed of automobiles in Fairmount Park was governed by section 21 of the Act of April 14, 1868, P. L. 1083, or by the Act of April 27, 1909, P. L. 265. *Glase v. Philadelphia,* 169 Pa. 488, 32 A. 600, involved injuries caused by "a mantrap, the very design of which was negligence." *Barthold v. Philadelphia,* 154 Pa. 109, 26 A. 304, held that refusal of defendant's request for binding instructions on the ground of contributory negligence was not error in an action for the death of a boy who was drowned in an open pool or well. In *Stevens v. Pittsburgh,* 329 Pa. 496, 198 A. 655, an action for the death of a boy killed while standing near his home by a bullet fired by a person in a public park, there had been long-continued, promiscuous shooting in the park—clearly a highly dangerous activity—and "the city had notice of the manner in which its property was being used and had opportunity to suppress the *nuisance.*" (Italics supplied). *Rachmel v. Clark,* 205 Pa. 314, 54 A. 1027, held that permitting slabs of slate to stand in the space adjacent to a public street in a thickly populated community amounted to a nuisance, visiting defendants with responsibility for

injuries occasioned thereby to any person, adult or infant, who was himself without fault. Finally, in *Fehrs v. McKeesport,* 318 Pa. 279, 178 A. 380, where a child was injured by the explosion of a dynamite cap—an inherently dangerous article,—the negligence was admitted. The sole question was whether an intervening act amounted to a superseding cause relieving the defendant from liability.

In *Clark v. City of Buffalo,* 288 N. Y. 62, 41 N. E. (2d) 459, action was brought against the city for a permanent injury to the eye of a seven-year-old girl sustained when a boy, eight years of age, picked up a piece of glass, lying near a wading pool in a public park where the children were playing, and threw it at her, striking her in the eye. It was contended that the city, having permitted a concessionaire to sell within the park drinks from bottles which when emptied were thrown upon the ground and broken, *was negligent in failing to remove broken glass from the ground adjacent to the wading pool and in failing, through its lifeguards and attendants stationed at the wading pool, properly to supervise children while playing in the park.* Reversing judgments entered on verdicts for the plaintiffs, the court there said (41 N. E. (2d) pp. 460, 461) : *"The city is not an insurer of the safety of those who make use of its park facilities. . . .* The problem, being one of causation, prompts the inquiry whether the record contains any evidence *from which the jury could find that the proximate cause of injuries suffered by the plaintiff was a failure by the city to exercise reasonable care either in the maintenance of the park as a public place for recreation or in the supervision of facilities which it afforded for children's play. There is no evidence that prior to the accident the plaintiff, her two companions and the boy who threw the glass were quarrelsome; nor is there proof that anything had occurred in their play either in the wading pool or elsewhere from which the most vigilant life guard or attendant could have anticipated*

*the unprovoked conduct of the boy whose sudden and impulsive act brought injury to the plaintiff. . . . The* efficient cause of plaintiff's injuries was the wrongful act of a third person—an act which, in the circumstances, could not have been foreseen in the exercise by the city of its legal duty toward the plaintiff." *As clearly, in the present case, the cause of minor appellee's regrettable injury was the unforeseeable and wrongful act of Richard VonNeida.* To hold otherwise is to say, in effect, that the law imposes upon a municipality conducting a public playground an absolute duty so to control children coming thereon as to prevent any play involving an object likely to cause injury if, being suddenly and without warning thrown by one child at another, it should strike the eye of such other child, whether in the course of the play or otherwise, with the result that not only shuttlecocks but most of the standard objects and appliances in common use for the recreation and diversion of children —such as marbles, baseballs, volleyballs, tennis balls, footballs, and many others—may no longer be considered permissible for public playgrounds.

I would reverse the judgments and here enter judgments for the appellant.