**Emerick v. Fox Raceway**

300

C.P. of Armstrong County, no. 2000-0659-Civil.

*Jonathan B. Mack* and *Jason E. Matzus,* for plaintiffs.
*James R. Miller* and *Roger R. Puz,* for defendants.

VALASEK, *J.,* July 21, 2004—This case arises as a result of injuries the then-minor plaintiff, Frank Emerick, suffered in a motocross accident April 16, 2000, at Fox Raceway. Minor plaintiff filed a complaint in negligence against Fox Raceway and its owners by and through his mother, Katherine Emerick. The mother also made a claim for damages in her own right. Defendants have filed a motion for summary judgment, arguing that they

had no duty to minor plaintiff, that he is barred from recovery under the doctrine of assumption of risk, and that the mother cannot maintain her claim for loss of consortium. The facts unequivocally established by the record are as follows.

## STATEMENT OF THE FACTS

On the day of the accident, minor plaintiff Frank Emerick was 16 years and nine months of age. He did not have his parents' permission to participate in the motocross race and, in fact, knew that they did not wish him to race at all. Frank Emerick depo., pp. 45-47. Nevertheless, minor plaintiff went to Fox Raceway with his sister, Kassie Emerick, his friend, Robert Schrencengost, and his then-girlfriend with the intention to race that day. *Id.,* pp. 43-48.

Fox Raceway was at the time of the accident a member of the American Motocross Association (AMA), the governing body of motocross racing, which among other things promulgates rules concerning the registration of participants. AMA rules state that *"[n]o rider under the legal age of majority* in the state in which the meet takes place *may compete without the written consent (signature on liability releases and entry forms) of his/her parents or legal guardians present at the meet."* AMA rules, chapter 2(A)(4), exhibit 2 of plaintiffs' brief. (emphasis added)

The rules further state: "[a] 'minor' release form must be completed for every minor participating in the day's activities. The parent, legal guardian or authorized adult must print and sign where designated on the releases." AMA rules, p. 45, exhibit 3 of plaintiffs' brief. AMA

rules provide that the referee or clerk of a course may ask to see any rider's proof of age at sign-in. AMA rules, chapter 5(A)(1)a, exhibit 4 of plaintiffs' brief.

The event in which minor plaintiff was injured was not an AMA-sanctioned event. However, defendant Dana Hennessy, an owner and primary operator of Fox Raceway, testified at his deposition that Fox Raceway followed AMA rules concerning the hosting of events and registering of participants, regardless of whether or not the race being hosted was an AMA-sanctioned event. Hennessy depo., pp. 46-47.

Hennessy said Fox Raceway had adopted the following policies and procedures. If an individual looked 30 years of age or younger, Fox Raceway personnel would ask how old the individual was, and if an individual looked 20 years of age or younger, the person would ask the individual to produce a valid identification. *Id.*, pp. 66-67. He stated, "That is pretty much the policy for all of the other racetracks that I am familiar with," indicating that he had checked with them. *Id.*, p. 67.

Hennessy later contradicted himself, stating that individuals under the age of 20 were *not* required to show any identification. *Id.*, p. 116. At that point, he said he had initially required participants to produce photo identification, but abandoned that policy after the first two or three races he hosted at Fox Raceway because participants did not have any photo identification with them. *Id.*

Hennessy said Fox Raceway's policy and procedure concerning parental consent for minors was that a minor participant was to have a parent or legal guardian sign

him in to race, and that as a general rule, the parent or legal guardian was required to sign in the minor in the presence of Fox Raceway personnel. *Id.*, pp. 69-70.

Michele Hetrick, a representative of Fox Raceway who was the person in charge of the registration process there, testified about the raceway's age verification and parental consent policies and procedures:

"Q: What is your understanding of the age verification policy at Fox Raceway?

"A: I ask everyone how old they are. If they look like they are under—you know, if they look under age, if they look under 30, I will ask them for ID. If they tell me they are 18, in good faith, I believe them.

"Q: Now, if they look under 30, what steps do you take to verify what their age is?

"A: I would ask them for ID. If they look—well, I thing [sic] the first I said was if they look between 20 and 30. If they look like they are under age, I will ask them for ID. . . .

"Q: . . . Now, for those individuals that look under age to you, what is it that you do to verify those individuals' ages?

"A: Either ask if their parents are there, ask for ID. If they can't produce either one of that, then they don't race.

"Q: So if an individual looks under age to you, you ask them if their parents are present?

"A: First I ask for ID.

"Q: You ask them for a photo ID?

"A: Uh-huh. Yes. . . .

"Q: And if they tell you they don't have a photo ID?

"A: I will ask them if they have a parent there.

"Q: And if they tell you they don't have a parent present, what do you do?

"A: They can't race.

"Q: Do you tell them?

"A: Yep. Sorry, you can't race." Hetrick depo., pp. 30-32.

According to minor plaintiff, a day or two prior to racing at Fox Raceway, his friend, Bob Schrecengost, told him he could probably race there, even without parental consent, because they did not check IDs. Frank Emerick depo., p. 51. It is undisputed that Fox Raceway personnel allowed minor plaintiff to enter an adult motocross race despite his being under the age of 18 and did not ask him for any identification.

After completing and submitting the adult entrant paperwork to Fox Raceway and paying an entry fee, minor plaintiff proceeded to line up for the first adult race. Mere moments after the race began, minor plaintiff tried to drive his motocross bike between two riders ahead of him at approximately 60 miles an hour, struck one of the bikes, and fell. Frank Emerick depo., pp. 116-122. As a result of the accident, minor plaintiff suffered injuries which resulted in permanent quadriplegia. He is now confined to a wheelchair.

The testimony elicited from minor plaintiff during his deposition establishes that he had ridden motorbikes for approximately 11 years, Frank Emerick depo., pp. 21-22, and that he understood that racing motorcycles was

dangerous. *Id.,* pp. 55, 67. Minor plaintiff admitted that his parents had forbidden him from racing because they believed it was dangerous. *Id.,* pp. 46-47. He also admitted that he had misrepresented his age when he registered for the race by selecting and presenting to Fox Raceway release and waiver of liability forms for racers 18 years of age and older. *Id.,* pp. 45, 48, 63, 86.

Plaintiffs submitted an expert report by Stan Brekne in opposition to defendants' motion for summary judgment. In Brekne's opinion:

"The age verification procedures employed at Fox Raceway were inadequate. Hosts of these types of activities should reasonably anticipate and expect the possibility that a minor will misrepresent his/her age in order to participate in a racing event. . . . Therefore, it is necessary that hosts of these types of events take appropriate steps to verify the accurate age of participants. The most practical step would be to require participants to produce valid photo identification during the registration process. This step would significantly eliminate the possibility of a minor misrepresenting his/her age in order to participate in a racing event. A policy that simply relies on the truthfulness of minors is not reasonable and in reality equates to having no policy at all." Plaintiffs' expert report, p. 6.

## DISCUSSION

The standard to be used by a trial court in determining whether a motion for summary judgment should be granted is well established. Pa.R.C.P. 1035.2(2) provides that summary judgment shall be granted "if, after the

completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

In determining whether to grant summary judgment, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Kelly v. Ziolko,* 705 A.2d 868, 870 (Pa. Super. 1997). Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of proving that there is no genuine issue of material fact and that judgment as a matter of law is appropriate. *Butterfield v. Giuntoli,* 448 Pa. Super. 1, 11, 670 A.2d 646, 651 (1995).

In a negligence action such as the instant case, the elements required to be pled and proven by a plaintiff are:

"(1) [T]he existence of a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant." *Atcovitz v. Gulph Mills Tennis Club Inc.,* 571 Pa. 580, 586, 812 A.2d 1218, 1222 (2002), citing *Orner v. Mallick,* 515 Pa. 132, 135, 527 A.2d 521, 523 (1987).

Defendants' motion for summary judgment contains three prongs: (1) that Fox Raceway owed no duty to

minor plaintiff; (2) that minor plaintiff assumed the risk of injury and hence is barred from recovery; and (3) that plaintiff cannot maintain a claim for loss of consortium. We first address the loss of consortium argument.

It is well established in Pennsylvania that "claims for loss of consortium are limited to spouses and do not extend to the loss of a child's consortium." See *Jackson v. Tastykake Inc.,* 437 Pa. Super. 34, 39, 648 A.2d 1214, 1217 (1994), citing *Quinn v. City of Pittsburgh,* 243 Pa. 521, 90 A. 353 (1914). Accordingly, Katherine Emerick's claim for loss of consortium with respect to her son in Count II of the complaint cannot be maintained as a matter of law.[1]

However, a careful reading of Count II of the complaint shows that it is not limited to allegations of loss of consortium. Specifically, paragraph 22 alleges that plaintiff mother

"lost the comfort and society of her youngest son and *has sustained* both emotional and *economic damages, including,* but not limited to, the following:

"(a) Loss to [sic] society and companionship of her youngest son, Rocky Emerick;

"*(b)* As Rocky Emerick was the 'man of the house,' *a loss of services, as he was responsible for yard work, home repairs and other such duties;*

---

1. Although this court did rule that plaintiff parents could proceed with their loss of "comfort and society" claim for the death of their minor son in *Wynkoop v. Luke,* 43 D.&C.4th 16 (Armstrong Cty. 1999), that was in the context of a wrongful death claim only. We held that under the Wrongful Death Statute, such loss could be compensable if, and only if, it resulted in a pecuniary loss.

"*(c) medical bills*

"(d) *costs for repairs to the home;* and

"(e) *Loss of past, present and future income due to the failure of her son, Rocky Emerick, to be able to assist her in her family-run equine business.*" Paragraph 22 of complaint. (emphasis added)

It is clear from the above that plaintiff mother is seeking compensation for economic damages in addition to damages for loss of consortium. Under Pennsylvania law, plaintiff mother is entitled to recover such damages. As the court explained in *Stambaugh v. Smith:*

"In the case of injury to a minor child, Pennsylvania courts *have allowed parents to recover money necessarily expended in treatment of the child's injuries and for lost earnings of the child during his minority: Meisel v. Little,* 407 Pa. 546, 180 A.2d 772 (1962). Pecuniary losses to parents of minor children which are recoverable at law are based upon the parents' duty to maintain, protect and educate the child and their right to the earnings of the child during its minority: *Woeckner v. Erie Electric Motor Company,* 182 Pa. 182, 37 A. 936 (1897). As stated by the Pennsylvania Supreme Court in *Goodhart v. Penna. R. Co.,* 177 Pa. 1, 14, 35 A. 191 (1896): 'The expenses for which a plaintiff may recover must be such as have actually been paid, or such as in the judgment of the jury are reasonably necessary to be incurred. The plaintiff cannot recover for the nursing and attendance of the members of his own household, unless they are hired servants.' " 18 D.&C.3d 780, 786-87 (Franklin Cty. 1981). (emphasis added) See also, *Steiner by Steiner v. Bell Telephone Co. of Pa.,* 358 Pa. Super. 505, 515, 517

A.2d 1348, 1353 (1986) ("A parent can recover only pecuniary losses, such as loss of services and medical expenses, for injury to his child."); *Simmons v. Parkette National Gymnastic Training Center,* 670 F. Supp. 140, 142 (E.D. Pa. 1987) ("Under Pennsylvania law personal injury to a minor gives rise to two separate and distinct causes of action, one the parents' claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for the losses after minority.").

Because Katherine Emerick's claim for loss of consortium with respect to her son cannot be maintained as a matter of law, the court will grant summary judgment in favor of defendants on that claim. However, the court will allow plaintiff mother's claim for cognizable economic damages to continue. As to that part of defendants' motion for summary judgment, it is denied.

We turn next to the argument that as a matter of law, defendants had no duty to minor plaintiff because Fox Raceway is an amusement facility and the risk of a motocross rider being injured while participating in a motocross race is inherent in the nature of the activity itself.

In support of this "no-duty" proposition, defendants cite *Romeo v. Pittsburgh Associates,* 787 A.2d 1027, 1030 (Pa. Super. 2001), which restated the general rule in Pennsylvania that "operators of a baseball stadium, amusement park, *or other such amusement facilities have no duty to protect or to warn spectators from 'common, frequent and expected' risks inherent in the activity." Id.,* citing *Hughes v. Seven Springs Farm Inc.,* 563 Pa. 501, 762 A.2d 339, 343 (2000). (emphasis added)

In *Romeo,* the plaintiff was injured by a foul ball while sitting in the stands during a Pittsburgh Pirates baseball game. The court said, "[T]he risk of being struck by a foul ball while sitting in the bleachers is exactly the type of 'common, frequent, and expected' risk inherent in a baseball game" and held that the defendant ball club had no duty to warn or protect plaintiff in that situation. *Id.* at 1031.

*Romeo* contrasted its case with the fact situation in *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978). In *Jones,* the Pennsylvania Supreme Court upheld a jury verdict for a plaintiff who had been struck by a foul ball during pregame batting practice while using the interior walkway from the stadium's outer concourse to the seats. The *Jones* case, which analyzed the line of "no-duty" cases at great length, is extremely instructive on the parameters of the "no duty" rule. The Supreme Court noted there, "Only when the plaintiff introduces adequate evidence that the amusement facility in which he was injured *deviated in some relevant respect from established custom* will it be proper for an 'inherent-risk' case to go to the jury." *Id.,* 483 Pa. at 84, 394 A.2d at 550. (emphasis added)

The court further explained that an amusement facility "will be liable for injuries to his patrons only *where he fails to 'use reasonable care in the construction, maintenance and management of [the facility], having regard to the character of the exhibitions given and the customary conduct of patrons invited.'* " *Id.* at 81, 394 A.2d at 549. (citations omitted) (emphasis added)[2]

2. See *Telega v. Security Bureau Inc.,* 719 A.2d 372 (Pa. Super. 1998) (no duty rule did not bar recovery by spectators at professional

The *Jones* court found that the facts before it presented exactly such a case, since "[t]he openings built into the wall over right field are an architectural feature of Three Rivers Stadium which are not an inherent feature of the spectator sport of baseball. They are not compelled by or associated with the ordinary manner in which baseball is played or viewed." *Id.* at 86, 394 A.2d at 551. Thus, the court ruled the defendant could be found liable to the plaintiff for what was, in essence, a case alleging negligent design.

The *Jones* court cautioned that the "no-duty" rules "apply only to risks which are 'common, frequent and expected,' *Goade, supra,* and *in no way affect the duty of theatres, amusement parks and sports facilities to protect patrons from foreseeably dangerous conditions not inherent in the amusement activity.*" *Id.* at 85, 394 A.2d at 551. (emphasis added)

*Jones* went on to discuss the duties of a possessor of land toward business invitees:

"Possessors of land owe a duty to protect invitees from foreseeable harm. Restatement (Second) of Torts §§341A, 343, 343A (1965). With respect to dangers which are obvious, the Restatement rule provides:

" 'A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm*

---

football game against provider of stadium security service for injuries incurred during disturbance among fans seeking souvenir ball in end zone).

*despite such knowledge or obviousness.'* Restatement (Second) of Torts §343A.

"Comment f to that section is worthy of note:

*"There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection.*

"Thus, an invitee in certain circumstances must be protected even from obvious dangers." *Id.* at 88, 394 A.2d at 552. (emphasis added)

In the instant case, defendants argue that minor plaintiff is deemed to have anticipated, and in fact did anticipate, the obvious risk of being injured while racing.[3] As a result, defendants argue, Fox Raceway had no duty to protect minor plaintiff from harm.

Plaintiffs respond that the very essence of their case is that defendants failed to exercise reasonable care in the *management* of Fox Raceway by failing to employ reasonable procedures to verify the age of racers and to obtain parental consent if needed. Plaintiffs state:

*"[T]his is a policy and procedure case concerning the defendants' age verification and parental consent pro-*

---

3. The difficulty of separating the inquiry of whether a duty exists from the question of assumption of risk necessitates that the two will sometimes be discussed in tandem rather than separately. See *Carrender v. Fitterer,* 503 Pa. 178, 188, 469 A.2d 120, 125 (1983) (citations omitted) (emphasis added) (*"to say that the invitee assumed the risk of injury* from a known and avoidable danger *is simply another way of expressing the lack of any duty* on the part of the possessor to protect the invitee against such dangers.").

*cedures.* (See plaintiffs' complaint at paragraphs 10, 11, 16(a), (b), (d), (e), (f), (h), and (j).) (See also, *plaintiffs' expert report attached hereto* . . . .) The primary areas of inquiry are twofold: (1) *what procedures, if any, were employed* by defendant Fox Raceway to verify the age of participants and obtain parental/legal guardian consent on behalf of minor participants; and (2) *were those procedures reasonable under the circumstances.*" Plaintiffs' brief in response to motion for summary judgment, p. 4. (emphasis added)[4]

Defendants concede that an owner of an amusement facility has a duty to exercise reasonable care in the management of it. See defendants' motion for summary judgment, para. 9; defendants' brief, p. 10. However, defendants claim that minor plaintiff's injuries were not a result of their management practices: *i.e.,* their failure to verify his age before allowing him to enter an adult race. Rather, they claim that his injuries resulted from his deliberate misrepresentation of his age and an accident which was an inherent risk of racing.

The court disagrees with defendants' analysis. We find that the danger to be guarded against here was the entirely foreseeable possibility that a minor would try to misrepresent his age and the concomitant danger of allowing a minor to unilaterally choose to engage in an attractive but dangerous activity without appropriate parental guidance and consideration concerning the minor's ability to safely participate in that activity.

---

4. To the extent that their complaint proffered any other theories of recovery, plaintiffs have now expressly withdrawn them. See brief in opposition to motion for summary judgment, p. 2, para. 5.

As the Pennsylvania Supreme Court stated in the case of *Styer v. Reading,* 360 Pa. 212, 217, 61 A.2d 382, 385 (1948), the question is whether "the conduct of the children [was] a foreseeably dangerous activity . . . creating an unreasonable risk of bodily harm to them[.]" *Id. Styer* involved a negligence action against a city for injuries resulting when an 11-year-old plaintiff was struck in the eye with a rubber-tipped badminton shuttlecock batted by another child in a small poorly-lighted room constituting part of a public playground that the city operated.

After the children batted the shuttlecock between them for several minutes at a close distance without a net in the presence of the playground leader, plaintiff told her companion that she intended to quit playing and tossed the shuttlecock to him. He in turn batted it back at her as she turned away and the shuttlecock struck her in the eye, causing the eye to ultimately be removed. The court held that the city had a duty to exercise reasonable care to control the behavior of the children, and that the negligence of one child toward another was not an independent, intervening act which absolved the city of responsibility for proper supervision of the children at the playground.

As the court noted in *Styer,* "Children must be expected to act upon immature judgment, childish instincts and impulses; others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly." *Id.* at 218, 61 A.2d at 385. (citations omitted)

Fox Raceway's own representatives testified they had a policy to prevent minors from racing at the facility unless they had a parent or legal guardian's signed con-

sent and to ask for photo IDs if an entrant appeared to be under age. Implicit in Fox Raceway's adoption of that policy was the recognition that minors must be safeguarded from themselves and protected from their own indiscretion and immature judgment.

Pennsylvania law recognizes this reality and as a consequence, imposes numerous restrictions upon minors. For example, minors are deemed incapable of possessing the legal capacity to enter into binding contracts. *Simmons v. Parkett National Gymnastic Training Center,* 670 F. Supp. 140 (E.D. Pa. 1987).[5] Minors are not permitted to institute, settle or otherwise resolve a legal claim on their own behalf. See Pa.R.C.P. 2027 and 2039. Additionally, minors are not granted or are denied the legal right to marry, vote, purchase alcoholic beverages and cigarettes, and serve in the military. The rationale behind such restrictions is that minors are presumed to be incapable of making informed, knowing and intelligent decisions concerning their own best interests.

This legal presumption concerning minors has great significance here. This is a case where defendants owned and operated a motocross racetrack for profit so that individuals could engage in the dangerous sport of motocross racing. Motocross racing holds a particular fascination for young people, who may or may not be

---

5. See *O'Leary Estate,* 352 Pa. 254, 256, 42 A.2d 624, 625 (1945), which said: "All lawyers know that the protection of infants is one of the chief concerns of the law. The rule is that no one may deal with a minor, except for necessaries. . . . An infant is not competent to contract. This positive inhibition is the way of the law to protect infants against their own lack of discretion and against the snares of designing persons."

able to maturely engage in it. That question is for their parents or legal guardians to decide. Although owners and operators of such facilities are certainly not insurers, they have a duty to take reasonable measures to safeguard against minors participating in such dangerous activities without parental consent.

When a person constructs or operates a dangerous or hazardous instrumentality, Pennsylvania law imposes a duty of exercising a correspondingly high degree of care on the part of those creating such structures. *Stewart v. Motts,* 539 Pa. 596, 601, 654 A.2d 535, 537 (1995). "[T]he care which it is reasonable to require of [an] actor varies with the danger involved in his act and is proportionate to it[, and t]he greater the danger, the greater the care which must be exercised . . . ." *Id.,* quoting Restatement (Second) of Torts §298.

As defendants warn in their entry forms and releases, motocross racing is a dangerous sport. Fox Raceway had a duty to create and follow reasonable procedures to ensure that minors did not misrepresent their age to race without parental consent. Given what defendants themselves admit was a high degree of danger, a high degree of care was required.

What is the source of defendants' duty? It comes from the duty to exercise reasonable care in the management of its facility. See *Romeo, supra; Hughes, supra* and *Jones, supra.* It can also be implied from the AMA standards which Fox Raceway adopted as its own, Hennessy's admission that the other racetracks he checked with required the production of photo IDs, and public policy considerations. As the Pennsylvania Superior Court noted in *Petrongola v. Comcast-Spectacor L.P.:*

"Whether a duty exists under a particular set of facts is a question of law. *It has long been hornbook law that a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others. . . .*

"*Whether a duty exists is ultimately a question of fairness.* The inquiry involves weighing the relationship of the parties, the nature of the risk and the public interest in the proposed solution. *Our duty analysis depends on many factors and is necessarily rooted in public policy considerations, i.e., our ideas of history, morals, justice, and society in general in determining where the loss should fall . . . . Furthermore, duty is only a word with which we state our conclusion that there is or is not to be liability;* it necessarily begs the question . . . . To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times." 789 A.2d 204, 210 (Pa. Super. 2001). (emphasis added)[6]

An analysis of the "no-duty" cases defendants cite in attempting to avoid liability reveals that the underlying rationale of the cases is basically rooted in what the courts consider to be good public policy. The courts' rationale is that many amusement activities are understood to carry a certain risk, and that it is not fair to sue the purveyor of the activities for injuries one sustains where one has ex-

---

6. See also, *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166, 1169 (2000) ("The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and [the] foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.").

pressly or impliedly assumed the risk of such injuries. Implicit in the cases is an underlying assumption that such activities are beneficial to society, and that individuals who engage in them make rational choices about whether or not to participate.

We believe it is also important to consider other public concerns, such as a minor's admittedly diminished capacity to appreciate risks to his own health and safety, and to make informed judgments about such risks. The necessity of erecting legal safeguards against the foreseeably rash decisions of minors is already well established in Pennsylvania law.

Where, as here, a racetrack operator can effectively guard against the risk of a minor misrepresenting his age to participate in a race that poses substantial physical danger through the minimal measure of requiring him to produce a photo ID, and where defendants themselves have said that inquiring into a racer's age was their "policy," to declare that the operator has no duty to take reasonable measures to verify a racer's age is contrary to good public policy.

The same reasoning militates against barring minor plaintiff's suit on the basis of the defense of assumption of risk. The Pennsylvania Supreme Court has recently reiterated that "[a]s a general rule, the doctrine of assumption of the risk, with its attendant 'complexities' and 'difficulties,' see generally, *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993) . . . has been supplanted by the Pennsylvania General Assembly's adoption of a system of recovery based on comparative fault in the Comparative Negligence Act. 42 Pa.C.S. §7102(a)-(b)." *Hughes v. Seven Springs Farm Inc.,* 563 Pa. 501, 762

A.2d 339, 341 (2000). See also, *Romeo v. Pittsburgh Associates,* 787 A.2d at 1031 ("With a few minor exceptions, the assumption of risk doctrine has since been abolished in Pennsylvania, and . . . the Pennsylvania Supreme Court [has] recast the assumption of risk analysis . . . in terms of the 'no-duty' rule.").

Recent appellate decisions have emphasized that "a plaintiff will not be precluded from recovering except where it is beyond question that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition *and thereby must be viewed as relieving the defendant of responsibility for his injuries." Bullman v. Giuntoli,* 761 A.2d 566, 570 (Pa. Super. 2000) (emphasis in original), quoting *Struble v. Valley Forge Military Academy,* 445 Pa. Super. 224, 665 A.2d 4 (1995).

A release of liability agreement executed by a minor is not enforceable in Pennsylvania because it is contrary to public policy. *Simmons v. Parkett National Gymnastic Training Center,* 670 F. Supp. 140 (E.D. Pa. 1987); *Shaner v. State System of Higher Education,* 40 D.&.C.4th 308 (Dauphin Cty. 1998). It makes no sense to limit a minor's ability to expressly assume a risk (by signing a release in advance), and at the same time allow him to impliedly assume that very risk.

For all these reasons, we find that minor plaintiff did not either expressly or impliedly assume the risk of injury while racing, and as such, is not barred from recovery. Although it cannot be said that a 16-year-old bears *no* responsibility for his actions, we find it much more appropriate to submit the issue of the parties' comparative negligence to the jury than to bar recovery against defendants as a matter of law.

Defendants' motion for summary judgment on the grounds that defendants had no duty to minor plaintiff and that minor plaintiff assumed the risk of injury while racing is hereby denied. The court will grant partial summary judgment in favor of defendants as to the mother's loss of consortium claim.

An appropriate order will be entered.

## ORDER

And now, July 21, 2004, for reasons set forth in the foregoing opinion, it is hereby ordered as follows:

(1) the plaintiff Katherine Emerick's claim for loss of filial consortium is hereby dismissed; and

(2) defendants' motion for summary judgment is denied in all other respects.